| 65 | 413 |
| 77 | 318 |
| 65 | 413 |
| 84 | 640 |
| 65 | 413 |
| 85 | 272 |

## JOHN C. CRAIG V. AMANDA CARTWRIGHT.

(Case No. 2186)

1. TRESPASS TO TRY TITLE—PETITION—WHAT A SUFFICIENT DESCRIPTION OF LAND SUED FOR—A. C. sued J. C. in trespass to try title, and described in the petition the land claimed by her as " that certain tract of land, containing three thousand two hundred and fifty-six and one-eighth acres, part of a certain other tract of land known as the league granted to David Brown, colonist, situated in Jeffer-

son county, Texas, on the west bank of the Neches river, and more particularly described as follows : * * *." The petition then set forth the field notes of the entire league granted to David Brown, and averred that the plaintiff was the legal and equitable owner thereof, except about five hundred acres conveyed November 4, 1839, by David Brown to J. Hutchinson and wife ; ten acres conveyed, November 29, 1836, by Brown to E. McFaddin ; three hundred and twenty acres conveyed, July 30, 1840, by Brown to G. W. Tevis ; fifty acres conveyed, March 2, 1847, by the sheriff of Jefferson county to F. W. Ogden ; two hundred acres conveyed, December 27, 1856, twenty-three and a half acres conveyed, May 12, 1857, and twenty acres conveyed, October 4, 1859, by M. Cartwright to J. J. Herring ; and six lots in the town of Santa Anna conveyed, May 24, 1837, by David Brown to W. C. McDaniel. The deeds conveying these several tracts excepted as above, were alleged to contain a description of the tracts, respectively, by metes and bounds, and to have been duly recorded in Jefferson county. Certified copies of these deeds were appended to the petition, as exhibits, and it was prayed that they might be taken as a part thereof. *Held*, that the petition, in connection with the papers therein referred to and made part of it, gave a sufficient description of the land sued for, and the court did not err in overruling demurrers raising that question.

2. LIMITATION—LAND—TRESPASSER—One who enters upon the land of another, without right, and erects houses and opens fields thereon, continuously occupying the houses and using the land for such purposes as the land is adapted to, is a trespasser ; but if this condition of affairs be permitted by the owner to continue for the period prescribed by the statute, without interruption by adverse suit to recover the land, this trespasser, this "*naked possessor*," will, under the law, lose that character and become the owner of the thing possessed.

3. SAME—POSSESSION, ETC—CHARGE OF COURT—A charge which assumes that possession, cultivation, use, or enjoyment of land must under the plea of ten years' limitation be, not only such as will give notice of the wrongful possession to the owner, if he exercise the care the law presumes every owner to exercise, but also such as will inform him of the extent and limit to which he is disseized ; and which assumes that, if the possession is without deed or other written memorandum defining its extent, limitation will confer title, only to the extent of an actual enclosure, is misleading.

4. SAME—LAND—POSSESSION BY OWNER—POSSESSION BY ANOTHER, UNDER COLOR OF TITLE GIVING BOUNDARIES—The law deems the owner of land to have constructive possession or seizin of all the land to which he has title, if there is no other person in possession ; but if there is some other person in possession of a part, under color of title giving boundaries, such possession, though the possessor has entered and holds under inferior title, will operate a disseizin of the holder of the superior title, to the extent of the inferior, unless the holder of the superior title is in actual possession of some part of the land covered by his title.

5. SAME—POSSESSION WHICH OPERATES A DISSEIZIN OF THE TRUE OWNER—WHEN IT CONFERS TITLE—A possession which operates a disseizin or dispossession of the true owner, will, if continued for the period and under the conditions prescribed by the statute, confer upon the possessor title to the thing possessed.

6. SAME—LAND NOT ACTUALLY OCCUPIED—NOTICE OF LIMITS TO WHICH DISSEIZOR CLAIMS NOT NECESSARY OTHERWISE THAN BY OPEN, NOTORIOUS, AND VISIBLE POSSESSION—Notice of the limits to which a disseizor claims, in order that limitation may run as to land not actually occupied, is not essential to be given otherwise than this is done by open, notorious, and visible possession.

Syllabus.

7. SAME—NOTICE—POSSESSION UNDER MUNIMENTS OF TITLE—NAKED POSSESSION—When one is in possession of land, holding under written muniments of title, unless the law requires them to be registered or requires notice otherwise to be given of them in some particular way, as a condition on which the holding will be held sufficient to sustain limitation, or limitation based on some particular period of possession, the fact of an open, visible, substantial possession, such as an owner or one holding under him is alone entitled to, must operate as notice to the owner, of whatever claim the possessor asserts or may assert. The same is true in all cases in which the law prescribes the limits to which the holding of a naked possessor shall extend, as affecting the title of the real owner.

8. SAME—In the one case, the owner must take notice of the law, and cannot plead ignorance of the effect which it gives to a possession continued for a given time ; in the other, he must take notice of the muniments of title to which the law gives a certain effect under the same period of holding. In either case, he is bound to know what will be the effect of a given possession upon his rights.

9. SAME—ACT OF FEBRUARY 5, 1841—REVISED STATUTES, ARTS. 3191, 3192, 3194, 3195—Under the 15th and 17th sections of the act of Feb. 5, 1841 (P. D., 4622, 4624), the holder of the inferior title might not put upon record his written muniments of title, or give notice of them otherwise than by his possession of the land, and yet limitation would run in his favor to the full extent of the boundaries fixed by them. So stands the law now, under articles 3191 and 3192 of the Revised Statutes ; and so stands also the law under articles 3194 and 3195 of the Revised Statutes, except in cases in which the possessor seeks to hold more land than the law construes to be embraced within the holding of the naked possessor.

10. SAME—Under the act of February 5, 1841, peaceable, naked possession for ten years extended to six hundred and forty acres, though only a part of that was actually occupied, whilst under the present law (R. S., art. 3195) such possession embraces not more than one hundred and sixty acres. Under both laws, the possessor may hold what he has actually enclosed, though it exceeds the area to which his possession would be construed to extend from an occupation of only a part of the area named in the statutes. (Citing Ward *v.* Drouthett, 44 Tex. 369 ; Pearson *v.* Boyd, 62 Tex. 541 ; Smith *v.* Garza, 15 Tex. 150 ; Moody *v.* Holcomb, 26 Tex. 719 ; Melton *v.* Turner, 38 Tex. 81 ; Mooring *v.* Campell, 47 Tex. 37.)

11. SAME—POSSESSION—WHEN SUFFICIENT EVIDENCE OF ADVERSE CLAIM—SPECULATIVE TRESPASSER—Possession, with the exercise of such rights as pertain to the owner alone, must be deemed sufficient evidence of adverse claim, in the absence of some evidence indicating that it is held in subordination to the title of the real owner ; and a " merely speculative trespasser," that is to say, a trespasser making claim with intent to acquire title by limitation if he can, will have the characteristic of an adverse possessor, and, if left to work his will, undisturbed by suit, will accomplish his purpose by possession for the requisite time.

12. SAME—POSSESSION BY TENANT—WHEN IT WILL NOT INTERRUPT RUNNING OF THE STATUTE—Where it appears that the possession of a tenant of him in whom is the legal title, and the right of possession of that tenant, are restricted to land which he has enclosed, and it does not appear that his possession extends to any of the land claimed by a defendant under the plea of limitation, such possession on the part of the tenant will not, in any respect, interrupt the running of the statute of limitation in favor of such defendant. (Citing Tex. Land Co. *v.*

Williams, 51 Tex. 61 ; Read v. Allen, 63 Tex. 158, and Allen v. McKelvain, Gal-
veston Term, 1886.)

13. SAME—EVIDENCE—DEED—SUFFICIENT DESCRIPTION—See opinion in this case for
   description in deeds conveying land, held sufficiently certain to admit them in
   evidence, under defendant's plea of limitation, for purpose of showing privity
   of possession and continuity of claim.

APPEAL from Jefferson.   Tried below before the Hon. W. H. Ford.

This is a suit, in trespass to try title, by Amanda Cartwright,
appellee, against John C. Craig, appellant, filed in the district court of
Jefferson county, August 31, 1883, for the recovery of three thousand
two hundred and fifty-six acres of land, more or less, a part of the tract
known as the league granted to David Brown, a colonist, situate on
the west bank of the Neches river, in Jefferson county, and for $10,000
damages for rental value thereof, and for trees and timber cut down,
appropriated and destroyed.

The defendant, in his answer, pleaded : First, general demurrer;
second, special demurrer, to the effect that the description in the
petition of the land and premises claimed therein, is too uncertain and
indefinite to inform defendant of what land is thereby sought to be
recovered of him; third, disclaimer as to all of the land and premises
described in the petition, except so much thereof as he was entitled
to under his pleas of limitation, alleged to amount to six hundred and
forty-four acres, including the Schusler and Lori lands and improve-
ments; fourth, not guilty; fifth, general denial; sixth, limitation of
ten years next before September 1, 1879, and next before the institu-
tion of this suit, as to four acres of the "Schusler place" and six
hundred and forty acres of the "Lori place," according to a boun-
dary line agreed to between defendant and one C. C. Caswell, and
according to the field notes of a survey made in accordance there-
with; seventh, laches, in that the defendant, and those under whom
he claimed, had been in actual, peaceable, adverse possession of the
six hundred and forty-four acres, cultivating, using and enjoying the
same, for more than twenty-five years next before September 1, 1879,
and next after plaintiff's cause of action, if any, accrued, and more
than thirty years next before the institution of this suit.

The plaintiff replied by supplemental petition, demurring to de-
fendant's answer, and putting in issue the affirmative allegations
thereof.   The court overruled the defendant's demurrers, and, on
December 2, 1885, the cause was tried by jury, resulting in a verdict in
favor of the plaintiff for the land, and $300 damages.   The court ren-
dered judgment on the verdict, and the defendant appealed.

O'Brien & John, for appellant, that the description in the petition

of the land sued for, was too uncertain and indefinite, cited: Norris v. Hunt, 51 Tex. 610; Wofford v. McKinna, 23 Tex. 36; Flannagan v. Boggess, 46 Tex. 330; Steinbeck v. Stone, 53 Tex. 382–386.

On the admissibility, in evidence, of the deed from Mrs. Ursaline Lori to Mrs. Catherine Van Wormer, and other documents offered by the appellant, under his plea of limitation of ten years, they cited: R. S., arts. 3194, 3198, 3199; Charle v. Saffold, 13 Tex. 110–114; Whitehead v. Foley, 28 Tex. 2, 14, 25; Ib., 286; Pearson v. Boyd, 62 Tex. 544; Field on Dam. 2.

On the question of limitation, they cited: Pas. Dig., art. 4624; R. S., arts. 3194, 3195; Melton v. Turner, 38 Tex. 81; Pearson v. Boyd, 62 Tex. 544; Whitehead v. Foley, 28 Tex. 269, 286; Gillespie v. Jones, 26 Tex. 343; Wheeler v. Moody, 9 Tex. 372.

*F. B. Sexton* and *Hal. W. Greer*, for appellee, that the petition was sufficiently certain in its description of the land sued for, cited: Wilson v. Smith, 50 Tex. 368; Ragsdale v. Robinson, 48 Tex. 379; Kingston v. Pickins, 46 Tex. 101; Flannagan v. Boggess, 46 Tex. 335; Croft v. Raines, 10 Tex. 520; Smith v. Chatham, 14 Tex. 322.

On the inadmissibility in evidence of the deed from Ursaline Lori to Katherine Van Wormer, and other documents offered by appellant, they cited: Norris v. Hunt, 51 Tex. 609; Mooring v. McBride, 62 Tex. 309.

On the question of limitation, they cited: Whitehead v. Foley, 28 Tex. 289; Ward v. Drouthett, 44 Tex. 366; Mitchell v. Burdett, 22 Tex. 633–635; Gillespie v. Jones, 26 Tex. 346; Trueheart v. McMichael, 46 Tex. 228; Mooring v. Campbell, 47 Tex. 38–42; Stegall v. Huff, 54 Tex. 197; Chance v. Branch, 58 Tex. 492–493; Satterwhite v. Rosser, 61 Tex. 166; Bracken v. Jones, 63 Tex. 184; 3 Washburn on Real Prop., 3d ed., 124, 127, 130, 133, 135, 141.

STAYTON, ASSOCIATE JUSTICE.—The petition, in connection with the papers which were referred to and made part of it, gave a sufficient description of the land sued for, and the court did not err in overruling demurrers which raised this question. The deed from David Brown, the original grantee of the land, which conveyed all of the grant unsold at the time he executed it, was admissible, as were the deeds executed by him before the execution of that deed, and, together, showed what passed by it.

The deeds through which appellee claims, show title in her to all of the headright league granted to David Brown, not sold by him prior

to the date of the deed made by him to Hanks, less lands which may have been sold under execution against Hanks while title was in him, and less lands sold by M. Cartwright, to whom Hanks conveyed, except as this may be affected by appellant's claim. As the several deeds offered by the appellee, showing conveyances by David Brown prior to his conveyance to Hanks, conveyance by the sheriff under execution against Hanks, and conveyances by M. Cartwright, were offered solely for the purpose of showing what part of the league the appellee still owned and were restrictive of her right, it is unimportant to inquire whether they were operative.

The appellee was not asserting rights through them, but, for the purpose of this action, was admitting their validity, thus limiting her right to recover what, but for the existence of those deeds, she would have the right to recover under the deeds from Brown to Hanks, and from Hanks to Cartwright, if not barred by limitation. The judgment gave to the appellee no lands which these deeds covered, and, if the appellant has any interest in the tracts described by these several deeds, that interest is not affected by the judgment in this case. Those lands were not involved in the suit, for the petition excluded them from the land sought to be recovered, and the deeds were only admitted to show the true boundaries of the land which the appellee sought to recover.

The pleadings of the appellant, asserting title only to so much as he may show himself entitled to under his plea of limitation of ten years, and disclaiming as to the residue of the land, it becomes unnecessary to consider many of the assignments of error. Those only will be considered which relate to the ruling of the court in the rejection of evidence offered by the appellant, under his plea of limitation of ten years, and to the charges of the court.

The evidence tends to show that one Lori made improvements and settled upon the land claimed by appellant, as early as the year 1856, and that he continued to occupy it with his family until his death, after which his widow occupied it until October 30, 1868, at which time she conveyed to Van Wormer, by deed, which described the property conveyed, as follows: "All of my right, interest and claim in and to my homestead place, situated in the county aforesaid, about two miles below the town of Beaumont, on the west side of the Neches river, together with all the improvements thereon. * * * I warrant and defend the title to the same."

This deed was objected to, on the ground that the description was insufficient and too vague to apprise the plaintiff of the land conveyed. This objection was sustained and the deed excluded. We are

of the opinion that this was error. The deed was admissible, if for no other purpose, than to show privity of possession and continuity of claim from the time Lori first entered upon the land until this action was brought—the appellant, and those through whom he claims, holding under that deed. There was no question as to what was claimed to be the homestead of Mrs. Lori at the time she made the deed. The deed from McDaniel to Noltz, the deed from Noltz to Craig, the petition, answer and judgment in the case of Craig *v.* Noltz, the agreement between Craig and Caswell as to a boundary line, and also the contract between Noltz and Lee & Ingalls, were also admissible, for the reason before stated or for the purpose of showing the continuity of claim and its adverse character.

The Van Wormers conveyed the "Lori place" to John Archer by deed of date April 20, 1871, and, as description of what they conveyed, the deed recited : "All our right, title and interest in and to the place now owned by us, known as the "Lori place," situated in the aforesaid county, about two miles below the town of Beaumont, on the west side of the Neches river, and of the headright of David Brown, together with the land thereunto pertaining, and all buildings, fences and other improvements thereon; and we warrant the title to the same." Eva Schusler conveyed by metes and bounds a part of the land now claimed by appellant, to Sam Robertson, by deed of date June 26, 1870.

This property was contiguous to the "Lori place," was known as the "Schusler place," and had been improved and occupied by Schusler and his family from as early as 1864 until her husband's death, and, by her, from that time until she conveyed to Robertson. Robertson conveyed the same land to John Archer by deed of date March 5, 1872.

On February 6, 1874, John Archer conveyed to Noltz both the "Lori" and Schusler places," describing them generally and as a part of the David Brown headright; and to this general description he added the following words, "together with the land thereunto pertaining." Noltz and wife conveyed to the appellant all that Archer had conveyed to Noltz; and in their deed assumed to convey six hundred and forty acres of land, which their deed recited was claimed by them "under the law of limitation of ten years." This deed bore date February 21, 1883. Noltz lived on the land claimed by appellant, from March 24, 1873 to March 1, 1883.

There is evidence tending to show a continuous occupation of the land, by some of the persons through whom the appellant claims, from the time Lori first entered upon it until the institution of this suit,

but the extent of the claim asserted by those who asserted the right to occupy, and to rent to others, is not shown, except as it may appear in recitals in deeds before referred to. We have thus stated the general facts bearing upon the occupation and claim of the several persons who have been in possession themselves or through tenants, that the bearing of the charges on the case may be the better understood. After having given a charge as to the facts which must have existed to enable appellant to recover under his plea of ten years limitation, which contained the proposition that those who had been in possession must have claimed it (the six hundred and forty acres to which that part of the charge referred) as their own, with intent to deprive the legal owner of the possession of the same, for ten consecutive years, etc., the court gave the following charges:

"In this connection you are instructed, that, before you can find for the defendant under his plea of the statute of limitation of ten years, you must be satisfied that he and those under whom he claims, had actual, peaceable, adverse, and exclusive possession of the six hundred and forty acres of the land he claims, for the time above specified, to be computed as above directed, by which is meant actual occupation of said six hundred and forty acres of land under enclosure, or by cultivation, use or enjoyment thereof, not as a mere trespasser, but claiming to be the owner thereof, in so open and notorious a manner as would distinctly inform the legal owner of the land of the defendant's possession, cultivation, use or enjoyment of said land, and of the extent and limits thereof."

"You are further instructed, that, if the evidence satisfies you that the defendant and those under whom he claims and occupies, cultivated and used, under enclosure, for ten years computed according to previous instructions, without any deed or memorandum in writing defining the limits of their possession, a less quantity than six hundred and forty acres of the land claimed by defendant, then such cultivation, use and occupation will only entitle the defendant to the quantity of land contained in such enclosure or enclosures, if more than one."

"You are instructed that the defendant, and those under whom he claims, in order to make good the plea of the statute of limitation, must claim during the full period of ten years, computed as already directed, to be the rightful owners of the land they claim; and if their claim was or is merely speculative, that is, if they were merely making claims to see if they could defeat or not the title of the plaintiff, then the plea of the statute of limitation is not good; and if the evidence satisfies you that the claim of the defendant or of those under

whom he claims, was of the character just stated, you cannot find for the defendant under his plea of the statute of limitation."

These charges assume several conditions of fact and of intent to be necessary before a possessor can acquire title by ten years limitation.

1. That a trespasser cannot acquire title by limitation.

The correctness of a charge must be determined in view of the facts of the case in which it is given. One is a trespasser who enters upon the land of another and cuts down and carries away timber from time to time; and he does not cease to be such, and does not acquire any right, however long he may continue such acts. One who enters upon the land of another, without right, and erects houses and opens fields thereon, continuously occupying the houses and using the land for all such purposes as the land is adapted to, is equally a trespasser. But if this condition of affairs is permitted by the owner to continue for the period prescribed by the statute, without interruption by adverse suit to recover the land, this trespasser, this *"naked possessor,"* under the law, loses that character, and becomes the owner of the thing possessed.

The act of February 5, 1841, P. D., 4624, declares that ten years of such peaceable possession and cultivation, use or enjoyment thereof, without any evidence of title, *shall give to such naked possessor full property* preclusive of all other claims in and to six hundred and forty acres of land, including his, her or their improvements. The change in this law made by the Revised Statutes will be considered in another connection. That part of the charge which we have considered ought not to have been given, under the facts of this case, and was calculated to mislead the jury.

2. The charge assumes, that the possession, cultivation, use or enjoyment must be, not only such as will give notice to the owner, if he exercises such care as the law presumes every owner to exercise, of the wrongful possession, but also such as will inform the owner of the extent and limit to which he is disseized.

3. It assumes that if the possession be without deed or other written memorandum defining the possession, limitation will confer title, only to the extent of an actual enclosure. The law deems the owner of land to have constructive possession or seizin of all the land to which he has title, if there is no other person in possession. If, however, there is some other person in possession of a part, under color of title giving boundaries, such possession, though the possessor enters and holds under inferior title, will operate a disseizin of the holder of the superior title, to the extent of the inferior, unless the

holder of the superior title is in possession of some part of the land covered by his title.

A possession which operates a disseizin or dispossession of the true owner, if continued for the period and under the conditions prescribed by the statutes, confers upon the possessor title to the thing possessed. Is it requisite that notice of the limits to which the disseizor claims shall be given, otherwise than as this is done by an open, visible, and notorious possession, in order that limitation may run as to land not actually occupied? We think not, under the laws of this state. Under the fifteenth and seventeenth sections of the act of February 5, 1841 (P. D., 4622, 4624), the holder of the inferior title might put his written muniments of title, or that which is generally understood to constitute color of title, in his pocket, never put them upon record or give notice of them otherwise than does his possession, and yet limitation would run in his favor to the full extent of the boundaries fixed by his written muniments of title.

So stands the law now under arts. 3191 and 3192 of the Revised Statutes. So stands the law now under arts. 3194 and 3195 of the Revised Statutes, except in cases in which the possessor seeks to hold more land than the law construes to be embraced within the holding of the naked possessor. When the possessor holds under written muniments of title, unless the law requires them to be registered, or notice otherwise given of them in some particular way, as a condition on which the holding will be held sufficient to sustain limitation, or limitation based on some particular period of possession, the fact of an open, visible, substantial possession, such as an owner, or one holding under him, is alone entitled to, must operate as notice to the owner of whatever claim the possessor asserts or may assert. The same must be true, in all cases in which the law prescribes the limits to which the holding of a naked possessor shall extend, as affecting the title of the real owner.

In the one case he must take notice of the law, and cannot plead ignorance of the effect which it gives to a possession continued for a given time; as must he in the other take notice of the muniments of title, to which the law gives a certain effect under the same period of holding. In either case, he is bound to know what will be the effect of a given possession upon his rights. The former law, in effect, declared that the possession of the naked possessor, if undisturbed by suit for the period of ten years, should have such effect upon six hundred and forty acres of land, including the improvements thereon as to divest title out of the former owner and vest it in even a wrongdoer; in him who, until the expiration of the full period of limitation,

was essentially a trespasser. In Charle v. Saffold, 13 Tex. 112, it was said : "It thus appears that naked possession will secure title for six hundred and forty acres without enclosure, or one thousand or two thousand with enclosure ; and the circumstances under which the possession is taken are altogether immaterial to the right, provided the occupant claims for himself and adversely to others. No matter how tortious or wrongful may be the seizure, if possession be continued for the time limited by statute, it will give title preclusive of all claims;   *   *   *   no question is made or is open relative to the *bona fides* or *mala fides* of the possession."

The Revised Statutes, while lessening the quantity of land which the naked possessor for ten years may hold, and somewhat changing the wording of the law, practically incorporates, as a part of the law, the very construction placed upon the former law in the case above cited. It provides, that "the peaceable and adverse possession contemplated in the preceding article, as against the person having right of action *shall be construed to embrace* not more than one hundred and sixty acres, including the improvemennts, or the number of acres actually enclosed should the same exceed one hundred and sixty acres ; but when such possession is taken and held under some written memorandum of title, other than a deed, which fixes the boundaries of the possessor's claim and is duly registered, such peaceable possession shall be construed to be co-extensive with the boundaries specified in such instrument." R. S., 3195.

Under the former law, such peaceable, naked possession was construed to extend to six hundred and forty acres, though only a part of that was actually occupied, while under the present law it is not construed to embrace more than one hundred and sixty acres. Under both laws, the possessor may hold what he had actually enclosed, though it exceeds the area to which his possession would be construed to extend from an occupation of only a part of the area named in the statutes. The present law, as did not the former, makes registration of written memorandum of title other than a deed necessary to enable the holder to have his possession construed to be co-extensive with the boundaries specified in his memorandum of title.

The following cases recognize the right of a possessor for ten years, where entire occupation is of a part of a larger tract, to hold to the extent of six hundred and forty acres, or one hundred and sixty acres, as his occupation may have been under the former or present law, by actual occupancy of only a part of that which he may so hold. Ward v. Drouthett, 44 Tex. 369 ; Pearson v. Boyd, 62 Tex. 541 ; Smith v. Garza ; 15 Tex. 150 ; Moody v. Holcomb, 26 Tex. 419 ; Melton v. Tur-

ner, 38 Tex. 81; Mooring *v.* Campbell, 47 Tex. 37.  Possession, with the exercise of such rights as pertain to an owner alone, must be deemed sufficient evidence of adverse claim, in the absence of some evidence indicating that it is held in subordination to the title of the real owner.

4. The charge assumes that, if the defendant and those through whom he claims were in possession, making claim with intent to acquire title by limitation, if they could, then their claims were "merely speculative," and limitation would not run in their favor. Such speculative trespassers would have the characteristics of adverse possessors, and if left to work their will, undisturbed by suit, will accomplish their purposes by possession for the requisite time.

Sufficient time did not elapse prior to the union of all the possessory rights in John Archer to bar the right of the appellee.  All these rights were transmitted, as appears from the evidence, by Archer to Noltz, and by Noltz to the appellant.  Since the conveyances to Archer, one possession has extended to all the places formerly possessed by several, and embraced all the improvements which were in close proximity; hence, no separate claim can now be maintained by the appellant based on the separate conveyances through which Archer held.  The possessions became one before the maturity of a title could have occurred, and upon one claim, under the statute, the appellant must stand.  The extent of his right, if any he has, must depend upon the law in force at the time his possession gave title.  It is claimed that limitation ceased to run in 1872 or 1873, as to all land not in the actual possession of the defendant or those through whom he claims; for that, after about that time, the appellee had a tenant in possession of the land for which she sues. It appears, however, that the possession of this tenant, and his right to possession, were restricted to land which he had enclosed, and it does not appear that such possession extended to any of the land claimed by the appellant under his plea of limitation.

This being true, his possession would not interrupt the running of the statute of limitation in favor of the appellant in any respect. Texas Land Co. *v.* Williams, 51 Tex. 61; Read *v.* Allen, 63 Tex. 158; Allen *v.* McKelvain, decided at present term.

For the errors mentioned, the judgment will be reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered February 5, 1886.]