SURGHENOR et al. v. DUCEY et al.

(Court of Civil Appeals of Texas. Galveston. April 29, 1911. Rehearing Denied June 1, 1911.)

1. ADVERSE POSSESSION (§ 102*)—EXTENT.
   Under the rule that actual possession of any part of the land described in a deed gives constructive possession to the whole, on a conflicting claim to an entire tract, embracing four merely paper subdivisions, made by an administrator in making a sale, defendants' actual possession of three of them extended their constructive possession to the fourth, though none of their inclosures or improvements were upon it.
   [Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 584, 585; Dec. Dig. § 102.*]

2. ADVERSE POSSESSION (§ 71*)—COLOR OF TITLE.
   One's right to acquire title by limitation to more than 160 acres under the ten-year limitation statute is not limited to cases where claim is made under a memorandum of title, as distinguished from a deed.
   [Ed. Note.—For other cases, see Adverse Possession, Dec. Dig. § 71.*]

3. TRESPASS TO TRY TITLE (§ 41*)—EVIDENCE —SUFFICIENCY.
   In trespass to try title, evidence held to sustain a finding that the title under which plaintiffs claim was extinguished by conveyance.
   [Ed. Note.—For other cases, see Trespass to Try Title, Dec. Dig. § 41.*]

4. DEEDS (§ 207*)—EVIDENCE.
   To establish execution of a deed by presumption, the proof need not exclude every other reasonable hypothesis than that the deed was executed; it being sufficient that it is more reasonable to presume that the deed was executed, than that it was not.
   [Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 614–624; Dec. Dig. § 207.*]

Appeal from District Court, Liberty County; L. B. Hightower, Judge.

Trespass to try title by John W. Surghenor and others against Patrick A. Ducey and others. Judgment for defendants, and plaintiffs appeal. Affirmed.

F. M. Spann, E. B. Pickett, Jr., Jas. E. Ferguson, and A. D. Stone, for appellants. Dean, Humphrey & Powell, for appellees.

REESE, J. This is a suit in trespass to try title by John W. Surghenor and others against the defendants Patrick A. Ducey and others, to recover one league of land of the Jose Dolores Martinez 11-league grant, being league No. 1 of the grant. By agreement of all the parties, there was a severance, and this suit went to trial against Sallie E. Gibbs only, who claimed a tract consisting of four parcels as described in her answer, in which

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes.

the field notes of each parcel are set out, containing in the aggregate 1,443 acres.

The plaintiffs claimed title as heirs and under the heirs of William Hardin, and the defendants under James Davis, who held under deed from the said Martinez. Defendants pleaded not guilty and the statute of limitation of three, five, and ten years. By supplemental petition, plaintiffs set up disability of minority of the two children of William Hardin from 1839 to 1850 and 1852, respectively, and the coverture of his widow from 1840 to 1857. The case was tried without the assistance of a jury and resulted in a judgment for defendants, from which plaintiffs appeal.

At the request of plaintiffs, the trial court filed conclusions of fact and law. We find that the conclusions of fact are fully authorized by the evidence, and they are adopted by us. Omitting unnecessary portions of such conclusions, they are as follows:

"On August 30, 1830, Jose Dolores Martinez made application in due form to the Governor of Coahuila and Texas for a concession of 11 leagues of land, upon which the concession was made in due form to said Martinez for 11 leagues. On September 7, 1832, Martinez executed a contract of sale of said 11 leagues to Adolfo Sterne and Charles Taylor. This, and, in fact, all of the instruments of title with regard to the concession, are set out in full in the findings of the trial court, but we deem it unnecessary to a proper understanding of the questions arising on this appeal to state more than the legal effect thereof. On April 14, 1833, Adolfo Sterne, claiming to act for himself and for Charles Taylor, executed to William Hardin a transfer of all of their rights under the contract of sale of Martinez to them. On November 11, 1833, William Hardin, claiming to act as agent and attorney in fact for Martinez, made application to the commissioner at Nacogdoches for an order of survey and final extension of title of said 11-league grant. Under this application an order of survey was issued on the same day. Survey was made and reported of 11 leagues of land, including therein league No. 1, of which the land in controversy is a part. Upon return of the survey the commissioner, on November 28, 1833, formally extended the title to Jose Dolores Martinez of the 11 leagues.

On August 9, 1837, Martinez executed to Charles Taylor a deed of conveyance of an undivided one-half of the 11 leagues. The consideration of the deed is recited to be $10,000 in cash. The deed is in due form in use at that day, and upon proper proof by the assisting witnesses was duly recorded in Nacogdoches county August 16, 1837, and in Liberty county April 19, 1844, and in Polk county November 17, 1848. On April 10, 1843, Martinez conveyed the remaining half of the 11 leagues to James Davis, which conveyance was duly recorded April 27, 1843,

in Liberty county, and also in Polk county, and recorded in Liberty county October 9, 1882. Afterwards, on December 12, 1850, Martinez executed to said Davis a second deed conveying to him 5½ leagues, being an undivided interest in the 11 leagues "granted to him by the government of Coahuila and Texas by deed bearing date the 28th November and signed by Vincente Aldrete." This deed was duly recorded in Polk county in 1850, and in Liberty county in 1853, and rerecorded in Liberty county in 1882. This last deed was intended to give a better description of the land than that contained in the first deed to Davis. On October 19, 1841, Charles S. Taylor paid to F. Lawrence Stricknay, Commissioner of Revenue of the republic of Texas, $1,284 in promissory notes of the republic, being the whole amount of government dues on the 11 leagues, the receipt of which is indorsed on the original grant to Martinez.

On April 10, 1843, Charles S. Taylor executed a power of attorney to H. Washington, under which a partition of the 11 leagues was made between Charles Taylor and Davis; Davis, among others, taking the league of which the land in controversy is a part, which was league No. 1, and also leagues 2, 6, 7, 8, 9, and 11. This deed of partition recites: "Whereas, the said parties are jointly interested in eleven leagues of land in the county of Liberty and republic of Texas, situated on the Trinity river and Double bayou, and being the same conveyed by Vincente Aldrete, Commissioner, on the part of the government of Coahuila and Texas, to Wm. Hardin, attorney for Jose Dolores Martinez, by title bearing date the 28th ·day of November, 1833, one undivided one half of the same being held by the said Taylor and Washington and the other by the said Davis; and whereas, the heirs or other representatives of the aforesaid Wm. Hardin have an unsettled claim to a portion of the said land on account of his services in locating and surveying, procuring the title and otherwise attending to same; and whereas, the said Taylor and Washington desire to have professional assistance or (of) said Davis in prosecuting or defending their claim aforesaid: Now, therefore, it is agreed by and between the parties aforesaid that the said Taylor and Washington will release one and a half leagues of their undivided half of said lands to said Davis, provided that he will settle the aforesaid claim of Wm. Hardin to the satisfaction of the heirs or other representatives aforesaid and so that the said Taylor and Washington and their remaining interest in said lands may be held harmless and entirely released for the same."

By two deeds bearing date June 20, 1846, James Davis conveyed leagues 2 and 8 to E. A. Palmer, and on November 19, 1850, Palmer conveyed said two leagues to Reuben D. Palmer. On May 10, 1855, Reuben D. Palmer conveyed the two leagues to E. A. and

R. J. Palmer, and said lands have been continuously claimed, and portions thereof occupied, by the said E. A. Palmer and those holding under him from the time of said conveyance to him by said Davis on June 20, 1848. At the time of the conveyance of said leagues 2 and 8 by James Davis to E. A. Palmer, Davis was living on said land, and after the conveyances thereof Davis moved onto leagues 6 and 9 allotted to him in the partition with Taylor, which said leagues 6 and 9 adjoin one another (so do leagues 2 and 8), and Davis established an improvement on leagues 6 and 9, which is known to this day as Davis hill, and continuously claimed said leagues 6 and 9, as well as leagues 11 and 1, but selling off portions of leagues 6 and 9 in his lifetime; his claim to the unsold portions continuing until the death of the said James Davis, which occurred in 1859, and prior to the 30th day of May, 1859.

The vendees of Davis of the portions of the said leagues sold by him, and those holding under said vendees, have continuously claimed the portions sold by him, and upon the death of James Davis in 1859 his written will was admitted to probate and J. H. McCardell was appointed administrator of the said James Davis with the will annexed. On the 5th day of October, 1859, the said McCardell and the appraisers of the estate of James Davis filed an inventory and appraisement of said estate, in which was included four leagues of land in Liberty county, part of the Martinez 11-league grant, less certain portions theretofore sold by the said James Davis, and the estate of said James Davis continued to claim said Martinez land and dispose of same from time to time until 1876, when the unsold and undistributed portions of said land were sold and conveyed by the said administrator, J. H. McCardell, under order of court, to J. V. Lea. At the May term, 1860, of the probate court of Polk county, the administrator of the estate of James Davis was duly ordered, by order entered of record, to make sale of the league of land described in plaintiffs' petition herein, in such sized tracts or parcels as should be deemed most advantageous for the estate, and subsequent thereto J. H. McCardell, the administrator, did sell to F. F. Foscue the four tracts of land claimed by the defendant Sallie E. Gibbs in this suit, and described in the answer of said defendant, said tracts being known as 1, 2, 3, and 4, and together containing 1,444 acres for the purchase price of $3,837.70, and at the September term, 1860, of the probate court of Polk county, the sale of said four tracts to the said F. F. Foscue was duly confirmed by the court and the administrator was ordered to make, execute, and deliver to the said Foscue a deed of conveyance for the lands so purchased by him from the said administrator. The judgment confirming the sale of said four tracts of land to the said

F. F. Foscue shows that the report of sale is accompanied by a plat, marked "Exhibit A," and directs that said report of sale and plat be recorded, but the same was not recorded, and the report of sale and plat have been lost or mislaid.

The four tracts of land purchased by Foscue from McCardell, the administrator of Davis, as aforesaid, were contiguous to each other and in fact formed a single body of land on the west end of league No. 1, extending from the north to the south side of said league, and with the Trinity river, which is the west line of league No. 1, as the west boundary line of the land so sold by the administrator to Foscue. Tract or division No. 1 is in the northwest corner of the league, and division No. 2 is in the southwest corner of the league, immediately south of division No. 1. Tract or division No. 3 adjoins and is immediately east of division No. 1, and tract or division No. 4 joins and is immediately east of tract or division No. 2. The north lines of divisions 1 and 3 are the same as the north line of the league, and the south line of tract or division No. 2 is the south line of the league. In the fall of 1860, after the purchase of the said four tracts of land by Foscue from Davis' administrator, Foscue went into possession thereof, taking a large number of slaves with him, and made extensive improvements, putting up houses and putting something like 300 acres of the land in cultivation, and continued in actual possession thereof, claiming all of the said 1,444 acres of land until the sale thereof by him to E. B. Nichols, by deed of conveyance of date April 30, 1866, and from the said F. F. Foscue to the said E. B. Nichols, which deed was filed for record in the office of the county clerk of Polk county on the 10th day of May, 1866, and duly recorded there, and refiled on the 18th day of February, 1902, and duly recorded. In this deed the land is conveyed as four tracts or divisions. The deed, however, shows on its face that the four tracts or divisions join one another and that the land therein contained is the west end of the league in controversy herein, extending from the Trinity river eastward, and that the west line of tracts 1 and 2 is the Trinity river. The north line of tracts 1 and 3 is the north line of the league, and the south line of tracts 2 and 4 is the south line of the league, and the east line of tract 3 extended southward forms the east line of tract 4, and the four tracts have a common inside corner; that is, the southeast corner of tract No. 1, the northeast corner of tract No. 2, the southwest corner of tract No. 3, and the northwest corner of tract No. 4 are a common point.

Upon the purchase of said land by Nichols, he took actual possession thereof and continued in possession of same until the 24th day of January, 1870, when, for the consideration of $3,000 in gold, by deed of convey-

ance of last-named date, he sold and conveyed said 1,444 acres of land to T. and S. Gibbs, of Walker county, Tex.; said deed reciting the consideration of $3,000 gold in hand paid. Said deed from said Nichols to said T. and S. Gibbs has attached thereto a plat which is a part of said deed, and which represents said land as a single body and has designated thereon what is called the "main farm," of about 300 acres, with buildings disconnected from the main farm and to the east thereof, and a small field is southeast of the main farm. This deed with the plat was filed for record on the 24th of November, 1870, and recorded in Book R, pages 342 and 343, of the Liberty County Deed Records, and was refiled for record on the 18th day of February, 1901, and was duly recorded in Book W, page 461 et seq., Liberty County Deed Records.

Upon the purchase of said land by T. and S. Gibbs, they took actual possession thereof and continued in possession thereof through their agent, T. B. Smith, and tenants. T. Gibbs, one of the grantees in the deed of conveyance from Nichols, died in 1872, leaving a written will in which he named his wife, Mary S. Gibbs, as independent executrix. Said written will was admitted to probate in the county court of Walker county, Tex., July 19, 1872, and in said court the partnership property of T. and S. Gibbs was duly partitioned, and in said partition the 1,444 acres claimed by the defendant Sallie E. Gibbs in this suit was allotted to the said S. Gibbs, and, pursuant to said partition by deed bearing date November 11, 1873, Mary S. Gibbs, as executrix of the estate of Thomas Gibbs, conveyed to the said S. Gibbs the property allotted to him in the partition, and among others the land in controversy herein, which is described in said deed from Mary S. Gibbs, executrix, to S. Gibbs, as follows: "Also another tract of land in Liberty county, Tex., known as the Foscue Farm, containing 1,280 acres, conveyed to T. and S. Gibbs by E. B. Nichols, by deed dated 24th of January, 1870, and recorded in Liberty county, 24th of February, 1870, Book R, pages 342 and 343, valued in partition at $3,000.00."

Until the making of said partition between the estate of T. Gibbs and the said S. Gibbs, the said land was claimed and possessed during the lifetime of T. Gibbs as the joint property of T. and S. Gibbs, and after the death of T. Gibbs as the joint property of S. Gibbs and the estate of T. Gibbs. After the allotment of said land to S. Gibbs and after the conveyance thereof to him by Mary S. Gibbs, as executrix of the last will of T. Gibbs, the said S. Gibbs continued in possession thereof during his lifetime and kept an agent, T. B. Smith, residing near said land, and who looked after said land and had charge thereof continuously for the said S. Gibbs, and which said agent rented out the cultivable portions of said land for the said S. Gibbs, keeping tenants thereon continuously during the lifetime of the said S. Gibbs, and during all of said time the said S. Gibbs claimed the whole of said land.

On the 30th day of September, 1886, the said S. Gibbs died, leaving a written will, naming the defendant Sallie E. Gibbs as independent executrix and sole devisee thereof, and said will was duly admitted to probate on the 6th day of December, 1886, in the county court of Walker county, Tex., upon the application of Mrs. Sallie E. Gibbs, as executrix thereof. The said Sallie E. Gibbs, as sole devisee of the will of S. Gibbs, took possession of the land in controversy immediately upon the death of the said S. Gibbs and has continued to be in possession thereof from the time of the death of said S. Gibbs to the time of the trial of this case, and has had a resident agent in Liberty county in charge of said land, looking after it and renting out the cultivable portions thereof, and has had tenants thereon every year. The cultivable portions of said land, as it has existed for more than 20 years, has extended to tracts 1, 3, and 4, and portions of tracts 1, 3, and 4 have been cultivated every year by the tenants of the Gibbs.

James Davis in his lifetime, for most of the years after the partition between him and Taylor, rendered the Martinez land for taxes, and for almost every year after the purchase from the Davis estate of the land claimed by the defendant Sallie E. Gibbs, by Foscue, said land has been rendered for taxes by Foscue, Nichols, and Gibbs, respectively, during the times of the ownership thereof by them respectively. Foscue rendered it for the years 1862, 1863, 1864, and 1865. Nichols rendered it for the years 1867, 1868, 1869, and 1870, and the Gibbs for each and every year since 1870, save and except the years 1872 and 1876. The record is silent as to the payment of taxes, except since the year 1886. But since the year 1886 the defendant Mrs. Sallie E. Gibbs has paid the taxes on said land every year.

From the time of Foscue's purchase of this land from Davis' administrator, it was openly claimed by him and notoriously known in the neighborhood as his land, and no other claim was asserted thereto, and after the sale of the land by Foscue to Nichols it was openly claimed by Nichols, and commonly and notoriously known in the neighborhood as Nichols' land, and no claim adverse to Nichols was asserted, as far as was known to those living in the neighborhood of the land. After the purchase of the land by the Gibbs, it was openly claimed by them during all of the years down to the institution of this suit, and was notoriously known in the community as their land, and until the year 1902, when certain of the heirs or devisees of the heirs of Jane O. Hardin filed power of attorney to James E. Ferguson, of record in Liberty county, no claim was asserted adverse to that of

the defendant Sallie E. Gibbs, and those under whom she holds title.

Upon the death of William Hardin, and in the year 1839, his brother, Franklin F. Hardin, as his administrator, filed an inventory of his property, in which the claim of the estate of the said Wm. Hardin to the Martinez land is set forth as one-fourth thereof. This inventory covers quite a great deal of other property and shows an estate of considerable value. On May 3, 1855, the heirs of Wm. Hardin, to wit, Jane O. Hardin, Joseph W. Hardin, and Sarah A. Kelton, executed a deed of conveyance to one Wm. S. Vance to all of their right, title, interest, and claim to two tracts containing 220½ acres, more or less, of the J. D. Martinez league, in Polk county, in which they recite as follows: "The interest here conveyed is the locative interest of our father, Wm. Hardin, undivided, in 221½ acres, a part of said 11 leagues granted as aforesaid, all of which grant, etc., is of record in the office of the county clerk of Liberty county."

Since the death of James Davis in 1859, there is no evidence of the assertion of any claim by the heirs of Wm. Hardin to any part of the Martinez land allotted to said James Davis in the partition between him and Taylor, and as far back as the records of Liberty county as to assessments and payment of taxes are preserved, to wit, back to the year 1886, no rendition has been made by the Hardin heirs, or any one holding under them, of any part of the Martinez land, and since the death of the said James Davis no claim has been asserted by or under the heirs of Wm. Hardin to any part of the Martinez land in Liberty county prior to the filing for record in the office of the county clerk of Liberty county of a power of attorney to James E. Ferguson, one of the plaintiffs, in the year 1902. The Liberty county courthouse, with all the deed records and other records of said county, was totally destroyed by fire on December 12, 1874.

Wm. Hardin died in June, 1839, and left surviving him as his only heirs his wife, Sarah A. Hardin (née Loony), to whom he was married on October 30, 1831, and two children, named Joseph W. and Jane O., then aged 8 and 10 years respectively. Sarah A. Hardin, the wife of Wm. Hardin, married O. P. Kelton in 1840, and died in 1866. The said O. P. Kelton died in 1857, and left the said Sarah A. Kelton as his surviving widow, and an only child, Mark O. Kelton. Joseph W. Hardin died in 1861, without heirs. Jane O. Hardin married Joe Hardin in 1856 and died in 1879, in Bell county, Tex., and her husband, Joe Hardin, died in 1859. Plaintiffs claim title to the land in this suit as the heirs of said Sarah A. Kelton, Jane O. Hardin, Joseph W. Hardin, and Mark O. Kelton, who were the sole heirs of Wm. Hardin, and whatever claim of title to the land in controversy that the said Wm. Hardin, Sarah A. Hardin, Joseph W. Hardin, Jane O. Hardin, and Mark O. Kelton would have, if living, is now vested in the plaintiffs.

Upon this evidence the court concluded further that "it was more reasonable to find and presume that the widow and heirs of Wm. Hardin, after said heirs arrived at the age of 21 years, conveyed to James Davis all their interest in the land, than it was to presume that they did not"; and hence it was concluded that such conveyance was made.

Upon the conclusions of fact, above set out, the trial court found for defendants on two grounds, first, that the evidence was sufficient to establish by presumption the execution of a deed from the heirs of Hardin to Davis, and, second, that defendants had shown title by limitation of 10 years. Following the decision of the Court of Civil Appeals of the Fourth district, in Surghenor v. Taliaferro, 98 S. W. 648, it was held that the grant conveyed both the legal and equitable title to the 11 leagues to Wm. Hardin. There are no cross-assignments of error, and none of the assignments of error of appellants attack this holding, and it will not be necessary to refer to it further in this opinion.

[1] The first assignment of error complains of the judgment, in so far as it affects subdivision No. 2 of the land in controversy, on the ground that there was no evidence that defendants had ever been in possession of the same. The conclusions of the trial court show that all of the improvements placed on the land by Davis and his successors in the title were located on subdivisions 1, 3, and 4, but the trial court took the view that, under the facts found, the tract of land in controversy must be treated as a solid body of land, held under deeds, some of them describing the land with reference to the subdivisions, and some of them as a single body of land. It is shown that these subdivisions all join in such a way as to make a solid body; the four having a common inner corner. The appellants claim the entire league No. 1 of which the land in controversy is a part, without reference to the subdivisions, and it is shown that these subdivisions were in fact only paper subdivisions made by the administrator of Davis in making sale of the land, under orders of the probate court, and that in the entire chain of title the entire tract, consisting of these four subdivisions, had passed by the deeds as a single body of land. If appellants claimed title only to subdivision 2, or to such subdivision as such, there might be some reason for their contention, under the doctrine laid down in Turner v. Moore, 81 Tex. 206, 16 S. W. 929, and subsequent cases, that the possession of the other subdivisions was not sufficient to put them on notice of an adverse claim to this subdivision; but where, as in this case, both parties claim to own the entire body of land, without regard to the subdivisions, which have been placed in appellants' title, possession of any part of the entire tract was notice to the owner of the superior title to the entire tract

that such possession was adverse to him— such as to require him to go to the records— which would have informed him that those in possession were claiming the entire tract as one body of land. The doctrine of Turner v. Moore is thus tersely stated by Associate Justice Williams, in Allen v. Boggess, 94 Tex. 85, 58 S. W. 833: "The case of Turner v. Moore, 81 Tex. 206 [16 S. W. 929], is authority for the proposition that, where a deed describes land part of which is owned by one person and the remainder by another, and an actual entry is made under it upon land of only one of the owners, the possession thus taken cannot be held to extend by construction to the land of the other, though the deed embraces it."

Under the rule, well established in this state, that actual possession of any part of the land described in the deed gives constructive possession to the whole, the court was not in error in holding that the defendants' possession extended to and included subdivision 2, notwithstanding none of their actual inclosures or improvements were upon it. Craig v. Cartwright, 65 Tex. 413; Allen v. Boggess, 94 Tex. 85, 58 S. W. 833. The assignment of error and the several propositions thereunder are overruled.

[2] Under the first, second, third, and fourth assignments of error, appellants advance the following proposition: "Title by limitation to more than 160 acres of land cannot be acquired under the 10-year limitation statute, except where the party claims under a memorandum of title (other than a deed), which is duly registered." The argument shows more clearly that the contention is that appellees holding under regular deeds, duly registered, cannot hold more than 160 acres of land under the 10-year statute, and that the right to hold to the extent of one's claim is limited to cases where claim is made under a memorandum of title, in contradistinction to a deed. We will not pause to discuss this question. It has been decided, we think conclusively, in Craig v. Cartwright, supra, and by this court, in Bringhurst v. Texas Co., 39 Tex. Civ. App. 500, 87 S. W. 898, contrary to appellants' contention.

[3] Under the fifth, sixth, seventh, and ninth assignments of error, appellants state the following propositions: "Trial courts are not authorized to presume the execution of a deed of conveyance, excepting in cases where all the circumstances in proof are consistent with the existence of such conveyance or deed. Where there is ground for reasonable minds to differ as to the existence of a deed or conveyance, a trial court is not authorized to presume the existence of same." It is, we think, undeniable that in this case all of the circumstances in proof are consistent with the execution of some instrument by reason of which whatever right, title, or claim Wm. Hardin or his heirs had in this land had been extinguished. Notwithstanding the conclusion of law, that the extension

of the grant vested the title to the 11 leagues in Wm. Hardin, by virtue of the contracts of sale from Martinez to Sterne and Taylor and the transfer thereof to Hardin, it is reasonably clear that Hardin himself made no such claim, nor did his representatives immediately after his death. In four years after the extension of the grant, Martinez conveyed one half of the 11 leagues to Charles Taylor for a consideration of $10,000, and soon thereafter the other half to Davis, and then they made partition, providing for the settlement of Hardin's claim to a locative interest, which Davis was to settle, in consideration of which he received 1½ leagues more than one-half of the grant. This was in 1843. In the inventory of Hardin's estate filed in 1839, his interest in this grant is stated to be one-fourth thereof, and that this was the extent of his claim, as understood by his heirs, is further shown by the deed of the heirs of Hardin to Wm. Vance, executed in 1855. Whatever this interest was, the partition agreement between Taylor and Davis bound Davis to settle it, and the long-continued claim of title and possession of Davis and those holding title under him, the openness and notoriety of such claim, as shown by extensive improvements, sale, and recording of deeds, payment of taxes, etc., preclude any idea that such claim was unknown to Hardin's heirs, who, notwithstanding, for nearly 60 years made not a whisper of any adverse claim on their part. The records of Liberty county were destroyed by fire in 1874. This suit was begun in 1903. The facts found by the court upon amply sufficient (most of them upon undisputed) evidence amply justified the further conclusion that the title in Hardin's heirs had been extinguished. Their long acquiescence in the possession and claim of appellees and those under whom they claim cannot be reasonably accounted for upon any other hypothesis. It is hardly going too far to say that the evidence, under the authorities, upon this question compelled such a finding, and that a contrary finding would have been against reason. Herndon v. Vick, 89 Tex. 475, 35 S. W. 141; Taylor v. Watkins, 26 Tex. 695; Manchaca v. Field, 62 Tex. 141; Brewer v. Cochran, 45 Tex. Civ. App. 179, 99 S. W. 1033; Frugia v. Trueheart, 48 Tex. Civ. App. 513, 106 S. W. 736.

[4] It is not true, as stated in the latter part of the proposition referred to, that, "where there is ground for reasonable minds to differ as to the existence of a deed or conveyance, a trial court is not authorized to presume the existence of the same." This is tantamount to saying that in such cases the facts and circumstances relied upon must establish the execution of a deed beyond a reasonable doubt, or so conclusively that there is no legal issue upon the question. Establishing the execution of a deed by presumption is in substance and effect proving it by circumstantial evidence, and there is no rule of law that we are aware of that

requires the evidence offered for this purpose to be such as to exclude every other reasonable hypothesis than that the deed was executed. It is enough that it is sufficient to render it more reasonable to presume that .the deed was executed, than that it was not. Frugia v. Trueheart, 48 Tex. Civ. App. 513, 106 S. W. 742. The doctrine embraced in the portion of the proposition referred to would render it practically impossible ever to establish the execution of a deed by circumstances.

This disposes of all of the assignments of error and the several propositions thereunder, which are severally overruled. The evidence was amply sufficient to support the judgment, both on the issue of limitation and the presumption of a deed, or other such act as was necessary to extinguish the claim of Hardin and his heirs in the land, whatever it may have been.

Finding no error, the judgment is affirmed. Affirmed.