## C. D. POOLE v. R. M. DULANEY ET AL.

Delivered May 21, 1898.

**1. Easement—Dedication—Way.**

The mere permissive use of a way does not constitute a dedication to public use.

**2. Same—Does Not Exist, When.**

No easement of way over a strip owned by the grantor and used as a passage way passes by the deed, where it is separated from the tract conveyed by an intervening strip, and there are means of ingress and egress to and from the tract conveyed on the other side thereof.

**3. Same—Deed Not Conveying.**

The mere fact that there is a way used as an approach to a lot, but upon which the lot does not abut and which has not been dedicated to public use, does not constitute such way an appurtenance to the lot which will pass by a deed thereof which does not mention the way, either in terms of description or as an appurtenance to the lot.

APPEAL from Hunt. Tried below before Hon. HOWARD TEMPLETON.

*Mathews & Mathews,* for appellant.

*Sherrill & Hefner* and *J. H. Hargrove,* for appellees. ·

FINLEY, CHIEF JUSTICE.—This suit was instituted by C. D. Poole against R. M. Dulaney, James Rattan, a minor, and his guardian, V. B. Campbell, and also the city of Greenville. It was alleged that on June 10, 1887, for a valuable consideration, Mrs. V. B. McDougal (now Mrs. V. B. Campbell) conveyed by deed to T. H. King and D. Upthegrove, their heirs and assigns, a certain lot of land, together with all rights and appurtenances thereto belonging. The land is described as situated in the town of Greenville, a part of the headright survey of John Gillespie. "Beginning on the west side of a continuation of Stonewall Street north a stake, from which a double hickory tree marked X brs. south 9-10 vrs; thence south with the west side of said street, if continued north, 223 7-10 vrs, a stake; thence west 129 2-10 vrs, a stake; thence north 4½° east 224 4-10 vrs., a stake; thence east 111 6-10 vrs. to the place of beginning—containing 4 77-100 acres of land." That the deed was a full warranty deed. That at the time of this conveyance said Mrs. Mc-Dougal owned a strip of land lying adjoining and against the tract conveyed, on the west side thereof, which was from forty to sixty feet wide, which had for many years prior to the time of such conveyance, and prior to the incorporation of the city of Greenville, been dedicated to the public use as a public highway by the proper authorities of Hunt County. That said public highway covered the entire strip of ground, and that in executing said deed, the western boundary line of the lot conveyed was located so as to run with and upon the eastern boundary of said public highway. That just prior to said conveyance the corporate limits of the city were extended so as to embrace said property and public highway.

That all the existing highways in this added territory came under the jurisdiction and control of said city, and it became said city's duty to keep them open and in repair. That said city did assume control of said highway and kept it open until the spring of the year 1896. That prior to the extension of the city limits the commissioners court had said highway worked and kept open, and the same was used in approaching the said lot of ground.

That in 1894 Mrs. V. B. Campbell, formerly Mrs. McDougal, joined by her husband, conveyed a lot of land immediately south of the western portion of said lot to Mrs. Estha Dixon by metes and bounds, designating the same to begin at the southwest corner of said King and Upthegrove lot, and to east, south, and west, and then to run north with the eastern edge of said street—thereby recognizing said highway; and that thereafter they sold said highway to the defendant Dulaney, extending from the southwest corner of said Dixon lot north 205 varas, including a portion of the highway west of the King and Upthegrove lot; the deed being a quitclaim deed.

That in 1896 Estha Dixon conveyed her lot to Dulaney, the deed calling for the western line of the lot to run north with the eastern edge of said street. That Dulaney and James Rattan, in July, 1896, run a barbed wire fence across the said street, and thereby cut off the means of approach to plaintiff's lot on the west side. Plaintiff alleges that he is the owner of said lot under King and Upthegrove; that he is seriously damaged by the obstruction of the alleged highway; that he has applied to the city to open it and the city has failed so to do, and he prays that the parties be required to remove the fence, and be enjoined from any further obstructions, etc.

The defendants answered by general and special exceptions, general denial, and by special answer to the merits. The special answer especially denied any dedication of the strip of land as a highway, and alleged that it was expressly understood between Mrs. McDougal and King and Upthegrove at the time of her conveyance to them, that she was not conveying any interest in said strip of land, or giving any right to it as a highway. She further alleged that the said strip of land did not then conform to any street of the city, and could not now be made to conform to any of its streets. She further alleged that the lot sold by her to King and Upthegrove does not extend to the traveled way referred to, and that there was land left between it and the lot conveyed by her to them. She specially denied that the county or city has ever taken control or recognized said traveled way as a public highway, etc.

The case was tried by submission of special issues of fact to a jury, and resulted in a verdict and judgment for defendants. The plaintiff has appealed and assigns errors.

*Opinion.*—1. The first error assigned is the refusal of the following special charge requested: "If you believe from the evidence that at the time Mrs. McDougal sold the land to King and Upthegrove that she

owned the land on all sides contiguous to the land sold, and that there was either a public or a private way or road that was used in approaching said property so sold on the west side thereof, then you are charged that a use of said road was conveyed by her deed to King and Upthegrove as an easement in said property, and you should so find by your verdict, and should find for plaintiff for the use of said highway."

The mere permissive use of a way does not constitute a dedication to the public use. Rantham v. Halfman, 58 Texas, 551. The charge asked is not confined to a way which has been dedicated to public use, and does not embrace the idea that the lot sold adjoins the way, nor that it is necessary as a way of ingress and egress to the lot purchased. The evidence is uncontroverted to the effect that the lot does not adjoin this way, there being a strip ranging from five to twenty feet wide lying between the east side of the road and the west side of the lot; and on the east side of the lot Stonewall Street furnishes means of ingress and egress thereto. The court did not err in refusing this charge and in failing to submit the issue involved in it.

2. The second assignment of error complains that the first question submitted by the court to the jury limited the jury in its findings as to whether or not the road on the west side of the lot, at the time of the sale to King and Upthegrove was adjoining the said lot, and whether it was then being used and traveled by the public; while the inquiry should have been whether such road was used as an approach to the lot.

The mere fact that there was a way which was used as an approach to the west side of the lot, upon which the lot did not abut, and which had not been dedicated to public use, would not constitute such way an appurtenance to the lot which would pass by deed to the lot, which does not mention said road, either in its terms or description or as an appurtenance to the lot sold.

3. The third assignment of error is as follows: "The jury erred in its answer to the first interrogatory propounded by the court, in answering that at the time of the sale of the park property to King and Upthegrove there was no road lying on the west side of said property that was used by the public generally as a public highway, and the same plaintiff is suing herein to have opened. And it also erred in its answer to the second question propounded by the court, in answering that 'if such way existed when King and Upthegrove bought,' that Mrs. McDougal never knew that fact at the time, and that she had never acquiesced in such use of such way (or road) ; because said verdict is by said answers entirely unsupported by the testimony heard in evidence, and is untrue, and the contrary is admitted to be the fact by the defendants' special answer herein. And the court erred in refusing to set aside said verdict and judgment rendered herein on account of said false findings of the jury, which were complained of in the third and fourth grounds set out in plaintiff's motion for a new trial, which findings were material to plaintiff's right to recover."

The questions and answer referred to in this assignment are as follows:

"Question 1. When Mrs. McDougal sold the park property to King and Upthegrove, was there then a way adjoining the said property on the west, being the same plaintiff is suing herein to have opened; and was such way then being used and traveled by the public generally as a public highway? If yes, how long had it been so used and traveled, and how long thereafter was it so used and traveled? Answer: No.

It is manifest that the finding of the jury is to the effect that there was no way *adjoining* to the lot sold, then being used as a highway. This finding was in accord with the undisputed evidence, that the way then used to approach the lot on the west did not *adjoin* the lot sold. Having answered this part of the question in the negative, it was unnecessary by the very form of the question to answer further. It is not assigned that the finding is uncertain, but that it was not warranted by the evidence. This assignment can not be sustained.

There are no other assignments of error presented, and we are of the opinion that the judgment should be affirmed, and it is so ordered.

*Affirmed.*