### MAGNOLIA PETROLEUM CO. et al. v. CASWELL et al.  (No. 1485.)

Court of Civil Appeals of Texas. Beaumont.
May 2, 1927.

Rehearing Denied May 25, 1927.

1. Judgment ⬤⟹91—Agreed judgment, in trespass to try title, conveying to defendants tracts separated by strip left as right of way for plaintiff's convenience, awarded title to strip to defendants with public easement for plaintiff's benefit.

Agreed judgment, in trespass to try title, conveying to defendants two tracts of land along river separated by 60-foot strip "left as a right of way for the convenience of" plaintiff, *held* to award title to such strip to defendants with public easement for benefit of plaintiff and assigns, in view of rules of construction for ambiguous judgments and practical construction by parties thereto.

2. Trial ⬤⟹136(3)—Construction of ambiguous judgment presents law question.

Construction and interpretation of ambiguous judgment presents question of law for court.

3. Judgment ⬤⟹524—Judgments must be construed as whole giving effect to every part.

Judgments must be construed as a whole and so as to give effect to every word and part.

4. Judgment ⬤⟹526—Entire judgment roll may be considered in interpreting ambiguous judgment, and necessary legal implications are included, though not expressed.

The entire judgment roll may be looked to for purpose of interpreting ambiguous judgment, and necessary legal implications are included, though not expressed in terms.

5. Judgment ⬤⟹524—In interpreting ambiguous judgment, legal effect, rather than language used, governs.

Legal effect, rather than mere language used, governs in interpretation of ambiguous judgment.

6. Judgment ⬤⟹526—In construing ambiguous judgment, entire record may be considered.

In cases of ambiguity, or doubt, entire record may be examined and considered in construing judgment.

7. Judgment ⬤⟹524—Judgments should have reasonable intendment.

Judgments are to have reasonable intendment.

8. Judgment ⬤⟹524—Interpretation of judgment which renders it more reasonable, effective, and conclusive will be adopted.

Where judgment is susceptible of two interpretations, that rendering it more reason-

able, effective, and conclusive, and which makes it harmonize with facts and law of case, will be adopted.

**9. Judgment ⬩524—Construction of judgment which will support it will be adopted, if possible.**

If possible, that construction of judgment will be adopted which will support it, rather than one that will destroy it.

**10. Judgment ⬩526—Opinion of court may be considered in construing judgment.**

Technical terms of judgment cannot be limited or controlled by opinion of court, but opinion may be considered on question of construction and effect of judgment.

**11. Judgment ⬩524—All presumptions are in support of judgment.**

All presumptions are in support of judgment, and nothing will be presumed against it.

**12. Judgment ⬩524—Construction of judgment adopted bp parties will not be changed without strong reasons.**

Construction of judgment adopted or acquiesced in by parties will not be changed without strong reasons.

**13. Judgment ⬩524—Judgment may be construed in light of circumstances.**

Judgment may be construed in light of circumstances under which it was rendered.

**14. Judgment ⬩951(3) — Parol evidence is admissible to explain ambiguous judgment.**

Parol evidence may be admitted to explain ambiguities in judgment.

**15. Judgment ⬩526—Ambiguous judgment may be interpreted in light of pleadings.**

Where language in judgment is ambiguous, and its meaning doubtful, reference may be had to pleadings in case, and judgment interpreted in light which they throw on it.

**16. Evidence ⬩82—Parties to agreed judgment, in trespass to try title, are presumed to settle controversy on reasonable basis.**

It is to be presumed that by agreed judgment, in trespass to try title, parties were settling their controversy on reasonable basis.

**17. Judgment ⬩91—Agreed judgment, in trespass to try title, should be construed as mutual conveyance.**

Agreed judgment, in trespass to try title, should be construed as mutual deed of conveyance between parties.

**18. Boundaries ⬩11—In conveyance of tracts bounded by 60-foot strip separating them, grantees each took to center of strip, subject to grantor's reserved right to use it as right of way.**

Conveyance of two tracts, bounded by 60-foot strip which separated them, and which grantor dedicated as right of way for convenience of herself and assigns, vested fee in soil to center of right of way in grantees, subject to grantor's right to use it, where such strip was referred to as a "monumental boundary."

**19. Boundaries ⬩48(3)—Defendant, claiming interest in land under conveyance from plaintiff, cannot after 15 years' acquiescence, hold land, except under conditions of grant providing that certain strip should be right of way.**

Defendant, claiming interest in land under conveyance from plaintiff containing agreement that certain strip should be easement or right of way, cannot claim such strip as its own, but must hold land under conditions of grant, after having used strip jointly under conditions of deed, for 15 years.

**20. Deeds ⬩90—Binding and effective deeds on valuable consideration must be construed to make all covenants on valuable consideration.**

Where deeds were on valuable consideration, and in all respects binding and effective, they must be so construed as to make all their conditions and covenants on valuable consideration.

**21. Railroads ⬩73(2)—Petroleum company could store freight cars on right of way granted by deed for "railroad purposes."**

Under grant of easement of right of way to be used solely for "railroad purposes," petroleum company *held* authorized to store freight cars, to be used in shipping products, on right of way; such storing being for "railroad purposes."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Railroad Purposes.]

**22. Railroads ⬩73(2)—Deed, conveying "right to use railroad track and right of way," held not to restrict use of property.**

Deed, granting "the right to use the railroad track and right of way," *held* to contain no restriction of use of such property.

**23. Judgment ⬩951(3)—In trespass to try title, plaintiff's testimony as to agreement with grantor held inadmissible to explain ambiguity in judgment as to strip left as right of way for such grantor's use.**

In suit in nature of trespass to try title, plaintiff's testimony as to agreement with her grantor which was not shown to have been communicated to grantor *held* not admissible, as tending to explain ambiguity in judgment relative to 60-foot strip left as right of way for convenience of such grantor.

**24. Appeal and error ⬩1054(1)—In trespass to try title, admission of incompetent evidence, though error, held harmless, where trial was to court.**

In suit in nature of trespass to try title, admission of plaintiff's testimony as to oral agreement with her grantor as to use of strip reserved by grantor as right of way, though error, *held* not reversible, where trial was to court without jury.

O'Quinn, J., dissenting.

Appeal from District Court, Jefferson County; Geo. C. O'Brien, Judge.

Suit by Anna E. Caswell and others against the Magnolia Petroleum Company and oth-

---

⬩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

ers, in which W. F. Brewer intervened. Judgment for plaintiffs, and defendants appeal. Affirmed in part, and in part reversed and rendered.

Walace Hawkins, of Dallas, and Minor & Lipscomb, of Beaumont, for appellants.

A. D. Lipscomb and C. W. Howth, both of Beaumont, for appellees.

WALKER, J. This suit was brought by Anna E. Caswell and others, as plaintiffs, against Magnolia Petroleum Company and others, as defendants, in the nature of trespass to try title, involving a strip of land 60 feet wide and about 4,000 feet long, situated between two tracts of land on the David Brown survey in Jefferson county, Tex., awarded to John C. Craig and Anna E. Caswell in the final judgment rendered by agreement in cause No. 895, Amanda Cartwright v. Anna E. Caswell et al., on the docket of the district court of said county. Also the plaintiffs prayed for damages and an injunction restraining the defendants from overburdening a certain right of way deeded by them to the Texarkana & Ft. Smith Railway Company in deed hereinafter described. W. F. Brewer intervened, claiming a right of way over the 60-foot strip, as assignee under Mrs. Cartwright.

Upon a trial to the court without a jury, the fee-simple title to the west half of the strip was decreed to plaintiffs and the east half to defendants. The entire strip was dedicated as a right of way, and the rights of the parties then fully stated and protected by a permanent injunction, and the defendants, being found guilty of overburdening the railroad right of way, were permanently enjoined from continuing that practice. The defendants have appealed from that order.

Prior to 1886, Mrs. Cartwright was the record owner all the David Brown league, except certain tracts designated in the judgment just named. Craig and Mrs. Caswell and her husband, C. C. Caswell, were in adverse possession of all the river front of the league suitable for use, each claiming 640 acres under the statutes of limitation, each claim fronting on the river, with a common division line between their respective claims, which line was established by Craig and Caswell by a written agreement of date the 13th of April, 1883, in which the respective limitation claims were described by metes and bounds. As the record owner of all the league except the lands previously sold, Mrs. Cartwright instituted separate suits in trespass to try title against Craig and Caswell for the league, and the defendants answered in their respective suits, disclaiming except as to the lands claimed by them under the limitation statutes. Upon a trial of the Craig Case, Mrs. Cartwright recovered judgment, but on appeal this judgment was reversed (Craig v. Cartwright, 65 Tex. 413) by Judge Stayton, who, speaking for the Supreme Court, held that Craig had been in possession personally and through his privies for many years beyond the limitation period, but did not decide, as a matter of law, the character of such possession, holding that to be a jury question. He further decided that the extent of Craig's recovery would depend on the law in force at the time his limitation matured; that is, whether he could recover 640 or 160 acres. After this decision was rendered, the Craig and Caswell Cases were consolidated, and the litigation ended by an agreed judgment decreeing to Mrs. Cartwright, as against the defendants, all the David Brown league of about 3,300 acres (excluding certain tracts previously sold)—

"except and less the two following described tracts of land part of said Brown league, to-wit: Ninety-six acres of land of the David Brown league on the bank of the Neches river, beginning at the N. E. corner of a tract of land sold by Matthew Cartwright to John J. Herring; thence down the river bank thus S. 83 deg. E. 268 varas; N. 83 deg. E. 149 varas to corner 60 feet west of a fence and corner made for C. C. Caswell; thence south 1,300 varas for corner; thence west 417 varas to Herring's estate line; thence north to the river following Herring's line to the beginning; also 224 acres (making in all 320 acres) of the same league, beginning 60 feet east of the second corner of the tract last above described at a corner made for C. C. Caswell at a post from which a pine bears N. 6° W. and a pine brs. N. 22° W. marked X thus; thence south 1,322 vrs. to a line of the Tevis survey (now owned by Jeff Chaison). Thence with said line north 81 deg. east at 700 vrs. to its N. E. corner; thence S. 4 deg. W. 301 vrs. with Tevis' east line; thence east 209 vrs. to a corner; thence north 1,629 varas to bank of river; thence up the river bank N. 83 deg. W. 930 varas to the place of beginning both of last two mentioned tracts of land containing altogether and in the aggregate 320 acres of land which is considered, ordered, and adjudged that the said defendants John C. Craig, Anna C. Caswell, surviving widow and executrix as aforesaid of Christopher C. Caswell, and the minors Emma, Wm. R., Sadie, George W., Lizzie, and Seawillow Caswell by their guardians aforesaid do have and recover of and from the said plaintiff Amanda Cartwright. The 60 feet left between the two surveys or tracts last above described is left as a right of way for the convenience of the plaintiff or her assigns, and the said 320 acres of land adjudged to the said defendants is to be divided between the said John C. Craig and the other defendants as they may agree and determine.

"It is further ordered, adjudged, and decreed that the said plaintiff and the said defendants may each have their writ of possession for the land recovered by and herein adjudged to them whenever they may demand the same of the clerk of this court after the adjournment of the present term of this court. * * *"

The 60-foot strip "left between the two surveys," as described in the judgment, is the land in controversy. About three weeks after the entry of this judgment Mrs. Caswell

bought the interest of Craig in the 320 acres, and her title to the 224-acre tract passed by mesne conveyances to appellants, who owned it at the time of the trial of this case. Mrs. Caswell has never parted with title to the 96-acre tract, nor to her interest, if any, in the 60-foot strip.

Appellants claim the 60-foot strip under (a) a partition deed, dated August 20, 1894, among the heirs of Amanda Cartwright, granting the strip and adjacent Cartwright lands on the David Brown to Leonidas Cartwright; (b) deed dated August 7, 1916, from Leonidas Cartwright to appellant, which was, in part, on the following covenant:

"It is understood, however, that as a part of the consideration for this deed the Magnolia Petroleum Company has agreed that within a reasonable time a railroad and a dirt road suitable for travel shall be constructed by the Magnolia Petroleum Company, or its assigns, or some one procured by them, either along and over said strip to the Neches river, or along and over a strip of land adjoining same to the Neches river, so that ingress and egress over said strip or some strip adjoining same both by railroad and dirt road may be brought about within a reasonable time."

In 1925, appellants acquired from the Cartwrights a release against the conditions of this deed. The attempt of appellants to inclose the 60-foot strip, after acquiring the Cartwright title, was the immediate occasion of this lawsuit.

[1-15] Except as to the issue of estoppel, all parties agree that the proper construction of the judgment in the old suit of Cartwright v. Craig and Caswell determines the rights of the parties in the 60-foot strip. Appellants insist that it is unambiguous and presents no difficulty; that by its terms Mrs. Cartwright recovered the fee to all the league, excluding the parts previously sold, except the two tracts of 96 acres and 224 acres affirmatively decreed to the defendants; and that the expression "left as a right of way" was intended not as words of limitation, but to explain why Mrs. Cartwright was decreed a recovery for a strip 60 feet wide and 4,-000 feet long. We cannot agree with appellants in their contention. If the fee to this strip of land was awarded to Mrs. Cartwright, it was hers for all purposes, and there is nothing on the face of the record requiring explanation. Words of explanation could only confuse her title and make ambiguous the language of recovery awarding her her interest. Why should the learned lawyers who wrote this agreed judgment (there was an express agreement upon the trial of this case that the lawyers who represented the parties to that old suit were learned, able, and skillful) try to make plain that which an explanation would only confuse? Why should it be said that any part of this decree should be treated as surplusage or so construed as to give it no meaning? It is our opinion that this old judgment is ambiguous. If we are correct in that conclusion, its effect can be ascertained only by resorting to the rules of construction evolved by the courts for that purpose. We have found no case on all fours with the facts before us, nor in its particular facts helpful, except as the general rules are illustrated thereby. When construed by the rules as given in 34 C. J. 501, § 794, the meaning of this judgment is made reasonably clear. It is there said:

"The legal operation and effect of a judgment must be ascertained by a construction and interpretation of it. This presents a question of law for the court. Judgments must be construed as a whole, and so as to give effect to every word and part. The entire judgment roll may be looked to for the purpose of interpretation. Necessary legal implications are included although not expressed in terms, but the adjudication does not extend beyond what the language used fairly warrants. The legal effect, rather than the mere language used, governs. In cases of ambiguity or doubt, the entire record may be examined and considered. Judgments are to have a reasonable intendment. Where a judgment is susceptible of two interpretations, that one will be adopted which renders it the more reasonable, effective, and conclusive, and which makes the judgment harmonize with the facts and law of the case and be such as ought to have been rendered. If possible, that construction will be adopted which will support the judgment, rather than one which will destroy it. The technical terms of a judgment cannot be limited or controlled by the opinion of the court, but it is generally held that the opinion may be considered on the question of the construction and effect of the judgment. All presumptions are in support of the judgment; nothing will be presumed against it. A construction adopted or acquiesced in by the parties will not be changed without strong reason."

Again (34 C. J. 506):

"A judgment may be construed in the light of the circumstances under which it was rendered."

22 C. J. 1279: Parol evidence may be admitted to explain an ambiguity.

Again (34 C. J. 503):

"Where the language of a judgment is ambiguous or its meaning doubtful, reference may be had to the pleadings in the case, and the judgment interpreted in the light which they throw upon it."

By "looking to the record" upon which this judgment was entered, and giving effect to its "reasonable intendments," and making it "harmonize with the facts," we think it should be construed as awarding the title to the 60-foot strip to Craig and Caswell burdened with a public easement for the benefit of Mrs. Cartwright and her assigns. In 1886 the David Brown league was of small value. While describing the 96 and 224 acre tracts as containing 320 acres, in fact, there was an excess of more than 20 acres. In view of

these facts, it cannot be argued that the *fee* to this little strip of 5½ acres 60 feet wide and 4,000 feet long was in the minds of the parties as a distinct consideration for the agreement. The *fee*, as a distinct interest in this narrow strip of land, was of no value to the Cartwrights, and could not have been profitably used by them. To fence it separately and subject it to her dominion would have cost Mrs. Cartwright far more than any value that could have been assigned to it. So it does not reasonably appear that it was in the mind of Mrs. Cartwright to take dominion of this narrow strip of land. Craig and Caswell recovered the land jointly. At the time of the entry of the judgment they were using the land claimed by them in their respective answers as a pasture. The Neches river was one of the boundaries to the land awarded them. Except as to the river, this land was completely surrounded by the land owned by Mrs. Caswell. Would it be a reasonable construction of their act to hold that they had divided their two tracts of land by an impassable barrier 60 feet wide and 4,000 feet long, requiring them to erect two lines of fence, which would have cost them out of all proportion to the value of this narrow strip, or would it be a reasonable construction to hold that they were making a contract that would force them to barge their cattle across the river from one side of the 60-foot strip to the other, or to make some contract with their recent adversary whereby they could carry their cattle from the 96-acre tract to their 224-acre tract? For, if the fee was awarded to Mrs. Cartwright, Craig and Caswell could not have carried their cattle across the 60-foot strip without being guilty of a trespass. Then to award the Cartwrights the fee to the strip in controversy would not give the judgment a "reasonable intendment."

On the issue of limitation in the old case, at the time the judgment was entered Craig and Caswell had part of the land claimed by them under fence, each of their claims fronting on the Neches river, with a common division line between them established by them by a written agreement dated the 13th day of April, 1883. Mrs. Caswell, one of the parties to the old judgment, testified that she remembered the suit of Cartwright v. Craig and Caswell, at which time the Craigs and Caswells were occupying the land on the river front. Mr. Caswell, her husband, had a brickyard, and made brick, on the land, and all the houses they lived in were on the land in controversy in that suit. Part of the land had been fenced many years, and the Craig fences on his part of the land ran down to the Caswell part at the river. She testified further that her folks had some of the land in possession on the river and lived on it; that her father, Mr. Kidd, moved there when she was 6 years old, and lived there 17 years; that the place was known as the Kidd

place; that she was 77 years old at the time she was testifying; that she married at the Kidd place; that her husband had made brick in the brickyard and used the pasture. The evidence showed further that the river front on the 96 acres and the 224 acres was the most valuable land on the David Brown league, and that Mrs. Cartwright needed access to the river for the use of the land awarded her.

[16] Construed in the light of the record thus shown on the pleadings of the parties, Craig and Caswell had as clear title to the strip as did Mrs. Cartwright. On the facts, Mrs. Cartwright conceded to Craig and Caswell on their limitation plea 320 acres of land, part, at least, of which they had under fence when the judgment was entered, and if the facts of the limitation claim upon which Craig and Caswell were awarded the 320-acre tract be read into the agreement, then, in fact, they owned this narrow strip, because the facts absolutely preclude the possibility of their having a limitation claim to the 96-acre tract and the 224-acre tract without also owning the 60-foot strip between those two tracts. It is to be presumed that by their agreed judgment the parties were settling their controversy on a reasonable basis; that is, Mrs. Cartwright was conceding to Craig and Caswell that particular portion of their claim which they would probably recover on the trial, and Craig and Caswell were conceding to Mrs. Cartwright all the land which they probably could not recover upon their limitation claim. Then to give this judgment the most "reasonable" construction, as we gather light from the record, requires us to conclude that the parties intended for Craig and Caswell to have the fee with an easement in favor of Mrs. Cartwright.

To give to Craig and Caswell the fee to this strip of land 60 feet wide and 4,000 feet long gives the judgment "a reasonable intendment," "a reasonable construction," and makes it "harmonize with the facts and law of the case and be such as ought to have been rendered."

In reaching this construction of the judgment, we do not go "beyond what the language used fairly warrants." We have seen that the court expressly found that the lawyers who represented the parties in the suit of 1886 were able, learned, and skillful. We must assume that these able attorneys used language to express the exact meaning and agreement of their clients, and that they intended "to give effect to every word and part" of their judgment. There being an apparent ambiguity or uncertainty between that part of the judgment declaring a general recovery in favor of the Cartwrights and that part dealing specifically with the 60 foot strip, the general recovery in favor of the plaintiff must yield to the particular language dealing with the rights reserved to her in the 60-foot strip,

especially when, as thus construed, the manifest intention of the parties would be given effect. If we concede that those learned lawyers used their language with care, not intending that any of it should be discarded as surplusage, and if we make the language of the general recovery in favor of the plaintiff yield to the specific declaration as to the 60-foot strip, then it seems to us the ambiguity in the judgment disappears and the intention of the parties is given effect.

[17] The construction we are giving the old judgment of 1886 seems to follow with more certainty when it is considered that this is an agreed judgment and ought therefore to be construed as a mutual deed of conveyance between the parties. Missouri, K. & T. Railway Co. v. State (Tex. Civ. App.) 275 S. W. 673.

But there is also a rule of construction of judgments, as well as contracts (34 C. J. 503):

"A construction adopted or acquiesced in, by the parties will not be changed without strong reason."

The Caswells and Cartwrights have construed this judgment as vesting the fee in the Caswells, and have mutually acquiesced in such construction for more than 25 years. If this proposition does not follow as a matter of law from the undisputed facts, then the issue was raised and the judgment of the trial court in favor of the Caswells resolved it in their favor. After buying the Craig interest, Mrs. Caswell immediately inclosed all the 320 acres, together with the 60-foot strip, under a common fence, and claimed and held the same with a part of the 60-foot strip until shortly before this suit was filed, hostile to all the world, except she recognized that the Cartwrights had a right of way or easement over the 60-foot strip, and, so recognizing the right of Mrs. Cartwright, gave her and her assigns access thereto through a gate at its south end, through which they could reach the river. During all that time the Caswells continuously used all the land inclosed as a pasture for stock and for such other purposes as suited their interest. At no time did the Cartwrights protest to the Caswells against this use, but acquiesced therein. Mrs. Caswell sold the 224-acre tract under two deeds, and gave a right of way across the 96-acre tract, in which she expressly claimed this 60-foot strip. The vendees under these deeds put them of record and went into notorious possession, building thereon a great refinery. Now, as already shown, the original entry of Craig and Caswell was hostile to the Cartwrights. They were awarded land on their limitation plea that in fact necessarily included the 60-foot strip. They continued in possession after the judgment, construing the judgment as giving them the land. The judgment awarded Mrs. Cartwright a writ of possession for all the land recovered by her. With this writ

hers, as a matter of right, can it be presumed that she permitted her adversaries to hold her land without objection for more than 25 years? We see no basis in this record for appellants' proposition that the possession of the Caswells was in law "in subordination" to the now asserted claim of the Cartwrights. But, on the contrary, it was hostile to their claim of the fee, and, to say the least, subject to the construction that they claimed no interest in the land except a right of way. Construing this judgment as a mutual conveyance between the parties, there is another proposition that gives the fee-simple title of this 60-foot strip to Craig and Caswell.

[18] As we have seen, Mrs. Cartwright conveyed the two tracts to Craig and Caswell, bounding the same by the east and west boundary lines of the 60-foot strip, which she expressly dedicated as "a right of way" for the convenience of herself or her assigns. Under the settled rules for the construction of boundaries, the effect of such a deed is to vest the fee in the soil to the center of the road or right of way in the grantees, subject only to the right of the grantors to use the same as a right of way. Amerman v. Railway Co. (Tex. Civ. App.) 182 S. W. 56; Thompson v. Maloney, 199 Ill. 276, 65 N. E. 236, 93 Am. St. Rep. 136, 137; Dill v. Board of Education, 47 N. J. Eq. 421, 20 A. 739, 10 L. R. A. 279; McKenzie v. Gleason, 184 Mass. 452, 69 N. E. 1076, 100 Am. St. Rep. 569; City of Dubuque v. Maloney, 9 Iowa, 450, 74 Am. Dec. 363. As an abstract proposition, appellant concedes the soundness of this proposition, but says it has no application to the facts of this case, but would construe the judgment by the following proposition:

"The presumption and rule of construction that a conveyance of land bounded on an easement of way carries with it the fee to the center thereof, subject to such easement, does not apply to the decree of 1886, awarding plaintiffs and Craig the 96-acre and 224-acre tracts.

"(a) The 5.5 acres is not referred to in the field notes, metes, and bounds of the 96-acre and 224-acre tracts as a monumental boundary.

"(b) In so far as the 5.5-acre tract forms the boundaries of the 96-acre and 224-acre tracts, the judgment describes the same as land to be used as a right of way and not as a mere 'right of way.'

"(c) The judgment of 1886, separately bounding the 96-acre and 224-acre tracts, calls for natural and artificial monuments actually marking on the ground at the time the east and west sides of the 5.5 acres, expressly declared to be 'between' (hence not within) the 96-acre and 224-acre tracts.

"(d) The 5.5 acres is an exception in fee and not a mere reservation of an easement of right of way under the judgment awarding land to Caswell and Craig as viewed under the surrounding circumstances."

We cannot agree with appellants in their construction of the judgment. As we con-

strue it, the 60-foot strip is referred to as "a monumental boundary." It expressly says, after giving the field notes to the 96 and 224 acre tracts, that the 60-foot strip is between those tracts. It is true the judgment says that this strip "is left as a right of way," but this language, when properly construed, should be given the effect of reserving only that interest in Mrs. Cartwright. The discussion of this general rule in 9 C. J. 197, is so clearly in point in its reasoning and in its application to the facts of this case that we quote extensively as follows:

"Briefly stated, the reasons in support of the rule may be outlined as follows: (1) The absence of any purpose to be served in the retention by the grantor of a narrow strip of land along the boundaries of the land conveyed, or the absence of any practical use to him for the strip of land; (2) the immediate interest of the vendee therein and its direct and substantial value to him; (3) grounds of public convenience and the prevention of disputes as to the precise boundaries of property; (4) the embarrassment to alienation and the improvement of property, which it consists with public policy to favor, if a different rule prevailed; (5) the concern of the state itself as to who shall determine and pay for improvements; (6) and in conclusion it has been said: 'If no other reason could be assigned in support of this rule of construction, the general understanding of the people, and the extensive and immemorial practice of claiming and acquiescing in such rights, ought to have great weight.'"

It is also said that failure to mention street or highway does not prevent the above rules operating. It is thus said in 9 C. J. 199, § 89:

"The general rule that the grantee of land bounded by a street or highway takes to the center thereof is not affected by the fact that the land is not described in the deed as bounded on the highway, provided it is actually so bounded. The presumption that it was not the intention of the grantor to withhold his interest in a street or highway to the middle of it, after having parted with all his right to the adjoining land, is just as strong as if the conveyance had expressly mentioned the street or the highway as a boundary."

And in 9 C. J. 200:

"The presumption of an intent to convey title to the center of a street or highway is not overcome by the fact that the land conveyed is described by metes and bounds, and that the distances stated in the description of the deed do not extend to the center of the street or highways."

[19] We think the judgment should be affirmed on the proposition of estoppel. Appellants claim an interest in the railroad right of way involved in this suit under a deed dated the 20th day of April, 1911, from Mrs. Caswell to the Texarkana & Ft. Smith Railway Company, describing it as follows:

"Beginning at a point at the south boundary line of a 96-acre subdivision of a tract of 256.6 acres, etc., said point being 18¾ feet west of the west boundary line of a certain public highway easement 60 feet in width,"

—referring to the strip of land in controversy. Prior to 1914, Mrs. Caswell had sold part of the 224-acre tract, which subdivision was subsequently acquired by appellants. For a valuable consideration, on the 16th day of November, 1914, she sold the balance of that tract to J. Edgar Pew by a written deed, reciting:

"It is the intention of the grantors to convey hereby all that tract and parcel of land which is bounded on the west by the 60-foot easement or right of way which was decreed to Anna E. Caswell et al. by that certain decree of the district court of Jefferson county, * * * and to use the above-described 60-foot strip, hereinbefore described, as an easement or right of way, as defined by the said decree of the district court of Jefferson county as a roadway, and to construct, operate, and maintain a railroad thereon in conjunction with grantors, their heirs and assigns, and others having a lawful right so to do."

[20] Appellants acquired and now own the Pew title to this tract of land, upon which it has built, as already said, one of the greatest refineries in the United States, a gate of which is near the south end of the 60-foot strip. Under their mutual construction of these deeds, dedicating this 60-foot strip to a public use as a highway, appellants and appellees have jointly used it for the purposes and under the conditions of their deeds for about 15 years. Upon a valuable consideration and by direct reference to the language of the old judgment, which we have tried to construe, they declared that it decreed the 60-foot strip to Mrs. Caswell. As the deeds from appellees to the 224-acre tract now held by appellants under these deeds were on a valuable consideration, and in all respects binding and effective, they must be so construed as to make all their conditions and covenants upon a valuable consideration. So construed, appellants and appellees have each paid to the other an express consideration for the covenant that this 60-foot strip was to be held and used by them as a right of way. Having declared in their deeds this 60-foot strip was a right of way, Mrs. Caswell would certainly be estopped to claim it against her covenants. So appellants, now claiming and asserting affirmative rights to the land conveyed by these deeds, can hold it only upon the conditions of the grant, and these conditions support the trial court's judgment in favor of appellees, dedicating this land to highway purposes, with a fee to the west half in the Caswells, as appurtenant to the 96-acre tract still owned by them, and the east half in appellants, as the owner of the 224-acre tract. The following authorities sustain this proposition:

In 21 C. J. p. 1111, § 111, it is said:

"If, in making a contract, the parties agree upon or assume the existence of a particular fact as the basis of their negotiations, they are estopped to deny the fact so long as the contract stands, in the absence of fraud, accident, or mistake. There can, of course, be no estoppel as to matters not included in the contract."

In explanation of the rule, it is said in the preceding paragraph:

"It seems to rest on the broad principle which precludes a party from taking inconsistent positions to another's prejudice."

Morse v. Smyth (D. C.) 255 F. 981, is directly in point. It was there held that a grantee claiming under a deed is estopped to deny the grantor's title to interests reserved to himself. In this case, it is not suggested that the deeds in question were secured by "fraud, accident, or mistake," and we see no reason why the rule announced should not be given full effect.

From what we have said, it follows that the trial court's judgment awarding appellees the title to 30 feet of the 60-foot strip, and appellants title to 30 feet of the 60-foot strip, and dedicating the strip to the use of the public as a highway, should be affirmed. On this conclusion, it is not necessary to enter into a discussion of the rights of the intervener, Brewer, as as assignee or grantee under the Cartwrights. As a member of the public generally, under the court's judgment, his rights are as extensive as they could possibly be under his contention and claim as a vendee under the Cartwright chain of title.

[21] The trial court erred in enjoining appellants from using the right of way deeded by the Caswells to the Texarkana & Ft. Smith Railway Company by the deed already referred to as containing the covenants relating to the 60-foot strip. This deed was upon the conditions "that the easement shall be solely for railway purposes," and upon abandonment "the rights herein granted shall cease and be determined." The deed to Pew above referred to, under which appellants hold, contains the following grant or easement to Pew:

"* * * The right in common with ourselves, our heirs, and assigns, including those having a right under any prior grant or deed from us, to use the railroad track and right of way now extending through the 96-acre tract owned by us and lying west of the tract hereby conveyed and west of the 89-acre tract conveyed by Anna E. Caswell and others to Geo. A. Burt," etc.

[22] It does not appear to us that any use of the right of way by appellants for storing freight cars to be used in shipping their products—and that was the extent of appellees' evidence on this issue—could be an extra burden upon that grant. Freight cars cannot be kept moving all the time. They must be stored occasionally. The Magnolia Petroleum Company has an immense volume of freight, which, necessarily, requires a large number of freight cars. The storing of these cars on this right of way is clearly for "railroad purposes." We think that the use of this track by the Magnolia Petroleum Company is clearly within the grant of the deed. Calcasieu Lumber Co. v. Harris, 77 Tex. 18, 13 S. W. 453. But further analyzing this part of the court's judgment, an examination of the right of way deed shows that the right of way was 3,561.3 feet long. 1,776.7 feet of this right of way, beginning with the southeast corner of the 96-acre tract, runs parallel with the west side of the 60-foot strip. This much of the easement was only 60 feet removed from the refinery site, and the land conveyed by the deed. 1,784.6 feet curved immediately west and across the 96-acre tract to the west side. With this in view, it was said in the 1914 deed to Pew that the grantee had "the right to use the railroad track and right of way." This language applied solely to the 1,776.7 feet. It further declared as to the remaining 1,784.6 feet that the grantee "should have the same right to use the excepted portion of said railroad track as may now or hereafter be enjoyed by any person, firm, or corporation owning no interest in said 96-acre tract of land." As we construe this grant of easement, as to the first 1,776.7 feet, the unrestricted right to "use the track and easement" is granted. The easement arises by express grant and is not limited nor restricted, and is therefore available for the very use now complained of by appellees. White et al. v. Grand Hotel, Ann. Cas. 1914C, 472. There is, on the other hand, by the very next clause of the deed a narrowing of the granted use as to the remaining 1,784.6 feet. The restriction is just such use as others owning no interest in the the land may subject the same to. Only as to this remaining 1,784.6 feet is the grantee bound by the purposes for which the easement is granted under the deed of 1911, but as to this appellants have not wronged appellees.

We therefore conclude that as to the 1,776.7 feet there is no restriction of use as to the Magnolia Petroleum Company. As we understand the proof, no use was shown of this part of the easement in violation of any express or implied contract or obligation toward appellees. As to the remaining 1,784.6 feet, there was no proof that it had been overburdened for "railroad purposes."

It follows that the judgment of the court enjoining appellants from storing cars on the railroad right of way is dissolved, but in so doing it is not our purpose to enlarge in any way the rights of appellants under their right of way deeds, and nothing said herein is to be construed as denying appellees any right reserved to them under the deeds under which appellants hold, if and when appellants vio-

late the terms and conditions of those deeds as we have herein construed them.

[23, 24] Appellants complain of the admission of Mrs. Caswell's testimony to the effect that, after the agreement had been made upon which the old lawsuits were settled, she agreed that Mrs. Cartwright might have a right of way to the river across the lands awarded to her. The agreement so testified to was not reduced to writing, nor was it shown that it was communicated to Mrs. Cartwright. This testimony was not admissible as tending to explain the ambiguity which we find in the judgment, for the reason that it was not made to appear that the agreement was ever communicated to Mrs. Cartwright or was ever incorporated into the judgment actually entered. But as the trial was to the court without a jury, the error is not sufficient to reverse the case.

But apart from any error in its reception the evidence did not enter into our conclusions on the issue of estoppel, that Craig and Cartwright took to the center of the 60-foot strip, and that the parties had mutually construed the judgment as awarding the 60-foot strip to Craig and Caswell.

The judgment of the trial court is therefore affirmed in part, as above indicated, and reversed and rendered as indicated.

O'QUINN, J. (dissenting). I find myself unable to agree with my brethren in their disposition of this case. I shall state briefly my reasons of dissent:

(1) The judgment in the consolidated cases of Cartwright v. Craig and Caswell, to my mind, is not only without ambiguity, but, to the contrary, is perfectly clear. After long and strenuous litigation, in which these cases had gone from the trial court to the Supreme Court and back, when again called for trial, the parties, being entirely familiar with all the claims, defenses, and contentions of all parties, by agreement consolidated the causes, and had an agreed judgment entered, in which *all of the land claimed by Mrs. Cartwright was awarded to her*, the judgment then reciting:

"*And it is hereby declared that all of the land hereinbefore set forth and described is recovered by the said plaintiff of and from the said defendants hereinbefore named, except and less the two following described tracts of land, part of said Brown league, to wit: Ninety-six acres of land* of the David Brown league on the bank of the Neches river, beginning at the N. E. corner of a tract of land sold by Matthew Cartwright to John J. Herring; thence down the river bank thus: S. 83 deg. E. 268 varas; N. 83 deg. E. 149 varas to corner 60 feet west of a fence and corner made for C. C. Caswell; thence south 1,300 varas for corner; thence west 417 varas to Herring's east line; thence north to the river following Herring's line to the beginning; *also 224 acres (making in all 320 acres) of the same league*, beginning 60 feet east of second corner of the tract last above described at a corner made for C. C. Caswell

at a post from which a pine bears N. 6° W. and a pine brs. N. 22° W. marked X thus; thence south 1,322 vrs. to a line of the Tevis survey (now owned by Jeff Chaison); thence with said line north 81 deg. east at 700 vrs. to its N. E corner; thence S. 4 deg. W. 301 vrs. with Tevis' east line; thence east 209 vrs. to a corner; thence north 1,629 varas to bank of river; thence up the river bank E. 83 deg. W. 930 varas to the place of beginning; *both of last two mentioned tracts of land containing together and in the aggregate 320 acres of land, which is considered, ordered, and adjudged that the said defendants John C. Craig and Anna C. Caswell,* surviving widow and executrix as aforesaid of Christopher Caswell, and the minors Emma, Wm. R., Sadie, George W., Lizzie, and Seawillow Caswell, by their guardians aforesaid, *do have and recover of and from the said plaintiff Amanda Cartwright the 60 feet left between the two surveys or tracts last above described is left as a right of way for the convenience of the plaintiff or her assigns, and the said 320 acres of land adjudged to the said defendants is to be divided between the said John C. Craig and the other defendants as they may agree and determine.*"

My brethren say that this judgment gave to Craig and Caswell this *60-foot strip lying between the two tracts, aggregating 320 acres,* which were awarded to Craig and Caswell. The judgment says that *all of* the land in dispute was awarded and adjudged to Mrs. Cartwright "*except and less the following described tracts.*" The two tracts, one of 96 acres and one of 224 acres, "*making in all 320 acres,*" as called for in the judgment, were then set out by metes and bounds. The judgment plainly says that Craig and Caswell were to recover *two,* not *three,* tracts, cut out and described by metes and bounds, *aggregating 320 acres of land,* which they did, and not *three tracts aggregating 325.5 acres*—the 60-foot strip contains 5.5 acres. Those able and experienced lawyers that are mentioned in the record and in the opinion of my brethren surely would not have said "*two tracts,*" if they meant "*three,*" and they would not have repeated and emphasized the *total recovery to aggregate 320 acres,* if they had meant 325.5 acres. If the judgment was intended to have awarded to the defendants the 60-foot strip, why divide the recovery into two tracts, with the 60-foot strip intervening? Why not have included it in the land set out by metes and bounds, and then, if it was intended that Mrs. Cartwright should have only an easement to the river, to have written into the agreed judgment that she was to have simply a right of access to the river through and over the land awarded to the defendants? It is perfectly clear to my mind that the judgment awarded a recovery to Craig and Caswell of *320 acres—no more—*and that as the river front was the most valuable and then needed portions of Mrs. Cartwright's land, and was much used then for various purposes, Mrs. Cartwright was insisting upon having an outlet of her own over her own land to the river,

and that the agreed judgment but voiced the agreement of all parties to the dispute that she should have same. The statement in the judgment that "the 60 feet left between the two surveys or tracts last above mentioned is left as a right of way for the convenience of the plaintiff or her assigns" is a plain statement only of the reason why the 60-foot strip was not included in the 320-acre recovery given Craig and Caswell—merely an explanation of its being "left" there in a narrow strip between the tracts given to the defendants, just as the statement "that said 320 acres adjudged to the said defendants is to be divided between the said John C. Craig and the other defendants as they may agree and determine." The statement in the judgment relative to the 60-foot strip being left between the 96-acre tract and the 224-acre tract is no part of the decreeing portion of the judgment—are not words of limitation—is merely an explanation in no wise obscuring or rendering ambiguous the decreeing portion of the judgment. Laidacker v. Palmer (Tex. Civ. App.) 210 S. W. 739, affirmed (Tex. Com. App.) 231 S. W. 362. Moreover, express adjudication controls mere recitals. The express order and decree awarding *two tracts*, describing them by metes and bounds, aggregating 320 acres, set forth in the judgment, controls the recital that the 60-foot strip was left between the two described and awarded tracts as a right of way for Mrs. Cartwright and her assigns. To hold otherwise would be to make the recital of the dignity of an awarding decree, giving to Craig and Caswell the 5.5 acres contained in the 60-foot strip, in addition to the two tracts, and aggregating more than 320 acres, which would be plainly in conflict with and contrary to the expressed adjudication of the decreeing portion of the judgment. Such an interpretation is without support in the rules for the construction of judgments. 34 C. J. § 795, p. 503.

My brethren argue that in 1886, the time the judgment was entered, the value of the David Brown league of land was small; that, while describing the 96 and 224 acre tracts awarded Craig and Caswell as containing 320 acres, there was in fact an excess of more than 20 acres, and therefore they say:

"It cannot be argued that the *fee* to this little strip of 5½ acres 60 feet wide and 4,000 feet long was in the minds of the parties as a distinct consideration for the agreement."

They further say:

"The *fee*, as a distinct interest in this narrow strip of land, was of no value to the Cartwrights, and could not have been profitably used by them. To fence it separately and subject it to her dominion would have cost Mrs. Cartwright ·far more than any value that could have been assigned to it. So it does not reasonably appear that it was in the mind of Mrs. Cartwright to take dominion of this narrow strip of land."

I think the reasoning is without weight. It is admitted that Mrs. Cartwright was the record owner of all the land described in her petition. Craig and Caswell were basing their claims on limitation, and were insisting upon holding 640 acres each. The Supreme Court (Craig v. Cartwright, 65 Tex. 413) left it questionable what amount, if any, they would be entitled to recover. That the land was of small value was no factor in determining what amount or where located the land that Craig and Caswell should recover. It was a question of whether at all they were entitled to recover under their limitation claims, and, this being doubtful, the compromise was effected. That the strip was only 60 feet wide and some 4,000 feet long was of no moment in determining the rights of the parties. The desire of Mrs. Cartwright for an outlet to the river, serviceable and opportune for the benefit of her more than 2,000 acres, was of much moment to her and to the value of her property. So we can easily understand, under the facts and the contentions of the parties to the suits, the reasons that moved the parties to the agreed settlement, and it does not appear doubtful as to the disposition of the fee to the 60-foot strip. The expression, "Left between the two surveys or tracts," aptly states that it was Mrs. Cartwright's land.

As to the correctness of the rules for construing a judgment announced by my brethren, I have no cavil. They announce that the judgment is ambiguous, and then proceed to apply the rules of interpretation or construction. I hold that the judgment is not in any degree ambiguous, and, that being true, there is neither room nor necessity for construction. If they are correct, then the judgment should be construed in the light of its recitals and the circumstances under which it was rendered, and in that event I think it would be difficult to support the conclusion that the judgment awarded the title to the 60-foot strip to Craig and Caswell. But if I am correct that there is no ambiguity in the judgment, then the argument of my brethren falls of its own weight.

I am unable to follow my brethren in their argument that, because of the little value of the land in 1886, the date of the judgment, and the amount it would have cost Mrs. Cartwright to have fenced in the 60-foot strip for the little or no use or accommodation it would have afforded her and the little profit it would have brought to her, the fee to same was not in her mind when the agreed judgment was had. In answer to this, it can be said that at that date the Neches river was much in use as a public highway, in that it was much used as an ingress and egress to bring commodities to the vicinity of the town of Beaumont, and the land of Mrs. Cartwright lay along the river's bank. The defendants Craig and Caswell were claiming by limitation all the land that was worth while as a river front in the

Cartwright tract, and, unless an outlet was reserved for the Cartwright land, she would have had no way of getting to the river for any purpose, and it is hardly to be thought that she would have been satisfied with a mere easement over land of her antagonists to preserve and accommodate her and her assigns' need for a river frontage. I think the very language of the deed that "the 60 feet left between the two surveys or tracts last above described is left as a right of way for the convenience of the plaintiff or her assigns" shows that it was affirmatively and purposely reserved in fee-simple title to Mrs. Cartwright, as it says, for her convenience in getting to the river as an outlet in shipping commodities away from her other lands or in bringing in such things as might then or later be desired for the benefit of her estate. The very word *"left"* proves that it was not taken as a part of the land adjudged to Craig and Caswell, but that it remained, as it had been adjudged, to Mrs. Cartwright, and the words in the deed but explain the reason for its being left in the form it was. She did not have to fence it off from the 96 and 224 acre tracts awarded to Craig and Caswell. If they desired, they could inclose their lands, and that would have left hers a lane for her egress and ingress.

My brethren argue that—

"It is to be presumed that by the agreed judgment the parties were settling their controversy on a reasonable basis; that is, Mrs. Cartwright was conceding to Craig and' Caswell that particular portion of their claim which they would probably recover on the trial, and Craig and Caswell were conceding to Mrs. Cartwright all the land which they probably could not recover under their limitation claim. Then to give this judgment a 'reasonable' construction, as we gather from the light of the record, requires us to conclude that the parties intended for Craig and Caswell to have the fee with an easement in favor of Mrs. Cartwright. To give to Craig and Caswell the fee to this strip of land 60 feet wide and 4,000 feet long gives the judgment 'a reasonable intendment,' a 'reasonable construction,' and makes it 'harmonize with the facts and the law of the case and be such as ought to have been rendered.' "

I fail to comprehend the logic or consistency, under the facts, of this argument. It is conceded that Mrs. Cartwright was the record owner of all the land in controversy. Craig and Caswell were each claiming 640 acres by limitation. They had lost in a former trial, but the case was reversed on appeal to the Supreme Court. Craig v. Cartwright, 65 Tex. 413. A careful reading of that opinion shows that it would have been difficult, indeed, for Craig or Caswell to have made out title by limitation by either the old (640-acre) statute, ·or the law in effect (160-acre statute) at the time the case was decided. So, when the cases were again called in the trial court, the agreed judgment here involved was entered. It is plain that, under the facts and the hold-ing of Judge Stayton on the former appeal, Craig and Caswell agreed to and received all they could have hoped to recover—160 acres each—under their limitation claim. The judgment just as plain as words can make it says that Craig and Caswell were to receive two tracts, one of 96 acres and the other of 224 acres, making in all 320 acres, 160 each—every foot under the law that they could have recovered—and the judgment *more than once* specifically awarded *all the rest* to Mrs. Cartwright. In the face of these facts and the plain recitals of the judgment, I cannot understand how it can be contended or "construed" that the judgment gave the 5.5-acre strip also to Craig and Caswell. This construction is, in my opinion, against the facts, against the law, and plainly against the agreement of the parties as reflected by the judgment. The statement of my brethren that Craig and Caswell "were awarded land on their limitation plea that in fact necessarily included the 60-foot strip," is without force, for the land awarded did not "necessarily" include any but that definitely decreed, as it was, by metes and bounds. The judgment "necessarily" awarded *all* the rest of the land in controversy to Mrs. Cartwright.

(2) I do not agree with my brethren that the judgment should receive the construction given it by them, because, as they say, such construction of the judgment had been adopted or acquiesced in by the parties to it. I am unable to find any evidence in the record to support such a conclusion as to the Cartwrights. They always claimed the 60-foot strip, included it in the division of the estate after the death of Mrs. Cartwright, and later on one of the heirs sold it to appellant. It is in the record that George Caswell, son of Mrs. Caswell and one of the interested parties here, approached Leonidas Cartwright, the heir who had received the strip in the division of the Cartwright estate, for the purpose of acquiring the 60-foot strip by an exchange of property, and that considerable negotiations were had, but the deal fell through mainly because the land offered by Caswell in exchange for the 60-foot strip constituted what was known as "Carroll avenue" in the city of Beaumont. Caswell admits the negotiations with Cartwright for the 60-foot strip, but says that he asked the opinion of his lawyer as to the title of the Cartwrights to the 60-foot strip, and was told "Cartwright had nothing to sell." So it indisputably appears that the Cartwrights were claiming the land all the time and were not "acquiescing" in the claim of Caswell nor "construing" the judgment as giving the strip to Caswell, and, further, that Caswell so far acknowledged and recognized the title as being in Cartwright as to make an effort to purchase it from Cartwright. I do not think the statement of my brethren that "the Caswells and Cartwrights have construed this judgment as vesting the fee in the

Caswells, and have mutually acquiesced in such construction for more than 25 years," is warranted by the record.

(3) Neither can I agree to the holding of the majority that, because the two tracts of land (the 96 and 224 acre tracts) border on the 60-foot strip, this fact vests the fee in the soil to the center of the 60-foot strip in Craig and Caswell. They say:

"Construing the judgment as a mutual conveyance between the parties, there is another proposition that gives the fee-simple title in this 60-foot strip to Craig and Caswell. As we have seen, Mrs. Cartwright conveyed the two tracts to Craig and Caswell, bounding the same by the east and west boundary lines of the 60-foot strip, which she expressly dedicated as a 'right of way' for the convenience of herself or her assigns. Under the well-settled rules for the construction of boundaries, the effect of such a deed is to vest the fee in the soil to the center of the road or right of way in the grantees, subject only to the right of the grantors to use the same as a right of way."

The rule of construction announced as an abstract proposition is correct, but, under the peculiar facts, has no application. Unquestionably the two tracts decreed to Craig and Caswell were established on the ground before the 60-foot strip was; in fact the 60-foot strip was defined, located, and established by first locating the two tracts; it had no existence until the two tracts, each of them, were completely designated and located. It did not exist before, and no reference to it or about it is to be found in the field notes of either of said tracts—nothing to show that they were established with reference to the 60-foot strip. The doctrine alluded to, and the authorities cited in its support, always refer to sales of lots in towns by maps showing streets, or to tracts of land calling to border on highways, rivers, roads, or some kind of boundary already in existence. Further, if it should be said that under the circumstances Mrs. Cartwright conveyed the two tracts to Craig and Caswell, it cannot be said that she bounded them on the east and west boundaries of the 60-foot strip, for, as before stated, this strip was not in existence until after the complete location by metes and bounds of the two tracts, their field notes calling for natural and artificial objects actually on the ground at the time, and in no wise calling for the east and west sides of the 60-foot strip, and, indeed, could not have done so, for the making of the east side of the 96-acre tract and the west side of the 224-acre tract formed the lines of the 60-foot strip, which, until that was done, had no existence. At the time of the entry of the judgment and ever afterwards, so far as is disclosed by the record, it did not exist in actual use, but only in contemplation, and that as a private way, not public. As I view it, there was no sort of dedication by Mrs. Cartwright of the right of way to any use other than her private necessities might require, but, to the contrary, the language of the judgment under discussion, whether necessary or not, was an exception in fee, and not a mere reservation of an easement. All the evidence goes to show that Mrs. Cartwright had the 60-foot strip left for a contemplated use as a private way only for herself and her assigns. However, if the field notes of the 96 and 224 acre tracts described in the judgment had bounded same by the *east and west boundary lines* of the 60-foot strip, as is argued by my brethren, which, as I conceive, is without support in the record, still that would not have vested the fee in the soil to the center of the road or right of way in Craig and Caswell, for where a deed or conveyance does *not* make a road or right of way *itself, as such,* but *only the lines* thereof, a boundary of the land conveyed *does not* carry title to the soil to the center. Clayton v. Gilmer County Court, 58 W. Va. 253, 52 S. E. 103, 2 L. R. A. (N. S.) 602; Brown v. Railway Co., 36 Utah, 257, 102 P. 740, 24 L. R. A. (N. S.) 86, 89; 2 Devlin on Real Estate Deeds, pp. 1978, 1979.

(4) The court erred in permitting Mrs. Anna E. Caswell, over the objection of appellant, to testify, in effect, as to the intent of the parties to the agreed judgment in question as to why and how and for what purpose the 60-foot strip was left as it was. She was a party to the old suit in 1886—that in which the agreed judgment was entered. She was permitted to testify to a private conversation between her brother and herself, wherein she says she told him that she would agree to give the Cartwrights a right of way or roadway over her land to the river—the 60-foot strip here in dispute. This evidence was of a conversation and agreement on the part of Mrs. Caswell concerning the disposition of the rights of Mrs. Cartwright in the suit in 1886, not made within the hearing of Mrs. Cartwright or any one representing her, nor in so far as the record discloses, ever made known to her. I think it was hearsay and inadmissible as a circumstance by which to construe the judgment as against Mrs. Cartwright, nor was it admissible as parol evidence against one holding under her to change the quality of the estate granted Mrs. Cartwright by the judgment, for the record in the case was before the court and was better evidence of what was done than the testimony complained of. Where the record of an action is before the court, evidence to explain what was done or understood to be done therein should be excluded. Allen v. Read, 66 Tex. 13, 19, 17 S. W. 115. The decisive issue here involved a proper construction of the agreed judgment. It must be construed by its own recitals, read in the light of the record in the case in which it was rendered. Parol evidence was not admissible to contradict, vary, or limit it. Southwestern Settlement & Development Co. v. May (Tex. Com. App.) 235 S. W. 529, 530; 22 C.

J. p. 1077, § 1388; 34 C. J. p. 506, § 803; Hightower v. Bennight, 53 Tex. Civ. App. 120, 115 S. W. 875; Smith v. Lee, 82 Tex. 124, 130, 17 S. W. 598. The cause being tried before the court without a jury, it might be said under a well-established rule that the error was harmless, on the theory that the court considered only legal evidence; but there is nothing in the record to indicate that the court did not consider the evidence of Mrs. Caswell. He did not so certify in approving the bill of exception taken to its admission. She testifying that the land—the 60-foot strip—was awarded to her, and that she consented that the Cartwrights might have "a right of way" or "roadway" over *her land* to the river, and the court rendering judgment upholding that contention, I think, goes far to show that the court did not only consider her testimony, but that he adopted same as his conclusion of the question. This was reversible error.

(5) I think the court was in error in adjudging to the intervener, Brewer, an easement or right of way over the 60-foot strip as appurtenant to the city lots he owns, which were once a part of the lands awarded Mrs. Cartwright by the judgment in 1886. It appears that his lots are in what is known as the Oakwood addition to the city of Beaumont, a part of a 37½-acre tract conveyed in 1902 to the Cartwright Oil & Development Company and later made into an addition.

The 60-foot strip is some one-half mile northeast of the lots. The map by which he bought did not show the 60-foot strip as a street, roadway, or otherwise. It seems that his claim is based on the assumption that Mrs. Cartwright obtained only an easement in the 60-foot strip by the judgment in 1886, and that such easement right passed as an appurtenant to each and every parcel of the part of the David Brown league awarded to Mrs. Cartwright under each and every subdivision and partition thereof. As I view it, there was no easement in favor of the land awarded to Mrs. Cartwright by the judgment of 1886. She was awarded the fee-simple title to *all* of the land claimed by her, *save and except only the two tracts described in the judgment, amounting to 320 acres of land.* Having the fee-simple title, of necessity there was no easement thereon, for no one can have an easement on his own property. Howell v. Estes, 71 Tex. 693, 12 S. W. 62; Callan v. Walters (Tex. Civ. App.) 190 S. W. 829. But aside from all this, Brewer bought lots by a map, and it did not show or in any manner indicate that the 60-foot strip was an appurtenant to the lots he bought or to the addition in which they were situated, and so no such appurtenant was acquired by him. Williams v. Eitel, 209 Ky. 284, 272 S. W. 752; Poole v. Dulaney, 19 Tex. Civ. App. 117, 46 S. W. 276.

Believing that the judgment in Craig v. Cartwright in 1886 awarded unconditionally the title to the 60-foot strip of land here in question to Mrs. Cartwright, and that said judgment is unambiguous and not subject to the construction given to it by the trial court and by my brethren, and that this is the decisive question in the case at bar, it is not necessary to discuss the question of estoppel as announced by my brethren, and I therefore express no opinion on same.

I concur in that part of the majority opinion that reverses and renders the judgment of the trial court relative to the use by appellant of certain portions of the railroad and spur.

For the reasons given above, I enter my dissent.